UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:24-cv-81151-CANNON

**JORGINA LULU GUILLERMO DIAZ,**
on behalf of herself and her minor
daughter **JANE DOE,**

   *Plaintiff,*

               v.

**DANIEL HERNANDEZ**,
a/k/a **6ix9ine,**
a/k/a **Tekashi69,** *et al.***,**

   *Defendants.*

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
<u>DEFENDANT DANIEL HERNANDEZ'S MOTION TO DISMISS</u>**

Plaintiff Jorgina Lulu Guillermo Diaz's Second Amended Complaint (the "SAC"), ECF No. 54, satisfies the pleading requirements applicable to each of her claims against Defendant Daniel Hernandez ("Hernandez"). Accordingly, Plaintiff respectfully requests that the Court deny Hernandez's Motion to Dismiss. ECF No. 75.

<u>**ARGUMENT**</u>

**A. PLAINTIFF'S ALLEGATIONS ARE CONSISTENT AND ADEQUATELY PLEAD HER FRAUD, CONVERSION, AND CIVIL THEFT CLAIMS[1]**

The general rule is that an "amended pleading supersedes the former pleading," such that prior allegations are "no longer a part of the pleader's averments" and not subject to consideration by the court on a motion to dismiss

---

[1] Counts 8-13, 17-122, 26-30.

unless they are expressly incorporated into the amendment. *Pintando v. Miami-Dade Hous. Ag.*, 501 F.3d 1241, 1243 (11th Cir. 2007) (quoting *Dresdner Bang AG, Dresdner Bank AG in Hamburg v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006)); *Goldstein v. Firer*, No. 1:20-cv-23402-JEM/Becerra, 2022 U.S. Dist. LEXIS 238274, at *2, 5 (S.D. Fla. May 2, 2022), *adopted*, 2022 U.S. Dist. LEXIS 218027, at *1 (S.D. Fla. Nov. 29, 2022)).

A narrow exception to this rule authorizes courts to disregard new allegations if: **(1)** they directly contradict previous allegations, *see Marchelletta v. Bergstrom*, 752 F. App'x 724, 733 (11th Cir. 2018) ("flat out contradictions"), and **(2)** the contradictions arise from either a "'transparent attempt to amend [the] pleading[s] in order to avoid a dispositive defense' raised by a defendant,"[2] or a "bad faith" attempt to amend a claim that already was dismissed.[3]

---

[2] *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-Civ, 2018 U.S. Dist. LEXIS 181023, at *15 (S.D. Fla. Oct. 17, 2018) (internal citation omitted)); *Lorente-Garcia v. Giraldo-Navarro*, No. 24-23066-CIV-ALTONAGA, 2025 U.S. Dist. LEXIS 30875, at *23 (S.D. Fla. Feb. 20, 2025) ("While Defendants point to discrepancies with prior pleadings, amended complaints supersede earlier ones . . . And the Court cannot conclude, as a matter of law, that Plaintiff is inventing facts to dodge dismissal.") (citation omitted); *Watson v. Wells Fargo Bank, N.A.*, No. 8:20-cv-1283-T-60CPT, 2020 U.S. Dist. LEXIS 225671, at *4 (M.D. Fla. Dec. 2, 2020) (declining to apply exception because "did not appear to the Court that the pleadings were manipulated to avoid a dispositive defense").

[3] *See Marchelletta*, 752 F. App'x at 733 (contradictions in "bad faith" because "sought to change the facts to revive a *Brady* claim against the Law Enforcement Defendants that had been dismissed the first time around"); *Fernandez v. Sch. Bd. of Miami-Dade Cty.*, 201 F. Supp. 3d 1353, 1361 n.1 (S.D. Fla. 2016) (rule is applicable in "rare occasions" and applying rule where plaintiffs "manipulated the allegations in their pleadings to avoid a dispositive defense"); *Castillo v. Fisher Island Club*, No. 20-24504-CV, 2021 U.S. Dist. LEXIS 144291, at *6 (S.D. Fla. July 30, 2021) (plaintiff "altered or omitted dates on time barred facts in an attempt to mask their time barred nature"); *Goldstein v. Firer*, No. 1:20-cv-23402-JEM/Becerra, 2022 U.S. Dist. LEXIS 238274, at *2 (S.D. Fla. May 2, 2022) (distinguishing Hernandez's cited cases).

This narrow exception does not apply here because Defendant has not identified an affirmative defense that Plaintiff allegedly is attempting to avoid via the SAC, and none of Plaintiff's claims against Defendant has ever been dismissed. Defendant does not cite any authority for the proposition that dismissal is warranted where neither of these two conditions is met.

Moreover, Plaintiff's new allegations do not contradict (let alone directly contradict) allegations in her prior pleadings. Rather, Plaintiff's new allegations, which are based on newly obtained evidence, supplement, clarify, and refine her prior allegations.[4]

1. ***Plaintiff's Allegations Concerning the Nature of the Cliq Agreement Are Consistent***

Plaintiff's pleadings consistently have alleged that Hernandez and his brother, Defendant Oscar Hernandez ("Oscar"), coerced Plaintiff to unknowingly sign the Cliq Management Agreement (the "Cliq Agreement") while incapacitated. ECF Nos. 1 and 10 ¶ 35; ECF No. 54 ¶ 59. Nonetheless, Hernandez argues that Plaintiff's prior allegations establish that she was aware of the Cliq Management Agreement and assented to it. ECF No. 75 at 5-6. Hernandez's argument assumes that Plaintiff must have known about and assented to the Cliq Agreement because

---

[4] Defendants' characterization of the SAC as a "shotgun pleading" is unfounded—the SAC specifies the "who, what, when, where, and how" of each alleged act (*see, e.g.,* ECF No. 54, ¶¶ 53–73, 79–100, 180–240, 272–343, 375–484), fully satisfying the requirements of Federal Rules of Civil Procedure 8(a)(2), 8(d)(1), and 10(b). *See also Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) (explaining that a proper complaint presents claims discretely and succinctly so the defendant may respond and the court may discern the basis for relief). By isolating each count and limiting incorporation to relevant facts, the SAC affords Defendants "fair notice of what acts are complained of, by whom, and when," precisely as the Eleventh Circuit requires. *See id.* at 1323.

3

she subsequently acknowledged that Hernandez had provided her with management services. *Id.* (quoting ECF No. 1 ¶ 95; ECF No. 10 ¶ 112).

That assumption is unwarranted because Plaintiff has never alleged that Hernandez, Oscar, or Defendant Mohamed B. Zaid (collectively, the "Individual Defendants") provided her managerial services *pursuant to* the Cliq Agreement *or on behalf of* Cliq Management. As Plaintiff detailed in the SAC, the Individual Defendants pretended to help Plaintiff by claiming to perform certain managerial services as a favor and without cost to her because of her personal relationship with Hernandez. ECF No. 54 ¶¶ 51-54, 65. Based on those fraudulent representations (among others), Defendants took unauthorized control of Plaintiff's funds and misappropriated them. *Id.*

As part of the supposed help they were providing Plaintiff, Hernandez told Plaintiff that the other Individual Defendants were going to "create a bank account solely in Plaintiff's name and under her exclusive control." *Id.* ¶ 53. Instead, and "*without Plaintiff's knowledge or consent,*" the Individual Defendants transferred the funds to accounts held by Cliq Management. *Id.* ¶ 55 (emphasis added). Plaintiff did not find out about the supposed Cliq Agreement or that the Individual Defendants were using Cliq Management to effect their misconduct until much later. *Id.* ¶ 64. Plaintiff still has no idea what the terms of the Cliq Agreement are. *Id.* All of the foregoing allegations supplement (and certainly do not directly contradict) Plaintiff's earlier allegations.

Hernandez argues that Plaintiff's alleged reasons for signing the Cliq Agreement are inherently contradictory and cannot all be simultaneously true. ECF No. 75 at 6. But, here again, the SAC merely supplements Plaintiff's

4

allegation that she unknowingly signed the signature page of the Cliq Agreement while incapacitated, ECF Nos. 1 and 10 ¶ 35; ECF No. 54 ¶ 59, by adding that Hernandez and Oscar further took advantage of Plaintiff's incapacitated state by falsely representing that she was signing a bank signature card needed to open the bank account Hernandez had promised. ECF No. 54 ¶ 61. That additional allegation does not contradict any of Plaintiff's allegations and there is no basis to conclude that it was informed by *her* memory of the incident so as to suggest that Plaintiff was not incapacitated at the time.

Hernandez argues that Plaintiff could not reasonably have believed that the Cliq Agreement's signature page was a bank signature card because Cliq Management's logo appeared on the signature page along with a signature line for a representative of Cliq Management. ECF No. 75 at 8. What Plaintiff could reasonably have believed is a question for the factfinder and, in any event, Plaintiff's inability to distinguish between a bank signature card and the Cliq Agreement's signature page is entirely consistent with (and further supports) that Hernandez and Oscar gave the signature page to Plaintiff and told her to sign it while she was so incapacitated that she did not notice the logo or the details of the signature block.

Plaintiff previously alleged: "In addition to being under the influence at the time she signed the agreement, Plaintiff, fearing for her safety and further mental and physical abuse, signed the agreement after Defendant insisted that her career would be over if she did not permit Defendant to manage her. Defendant also indicated that this arrangement would insulate them in case of scrutiny by the Internal Revenue Service." ECF No. 10 ¶ 37. The purpose of those allegations was

5

to describe Plaintiff's chaotic state of mind and vulnerability in and around the time she signed the Cliq Agreement and not, as Hernandez suggests, to supplant or contradict Plaintiff's allegations that she signed the Cliq Agreement unknowingly because she was intoxicated. ECF No. 75 at 6. Moreover, these allegations were not internally inconsistent, let alone sufficiently contradictory to warrant dismissal of Amended Complaint, particularly when viewed in the light most favorable to Plaintiff. *VSI Sales, LLC v. Disimone*, No. 20-61119-CIV-CAN, 2021 U.S. Dist. LEXIS 72183, at *1 (S.D. Fla. Apr. 12, 2021). Indeed, Plaintiff could have changed her theory entirely without running afoul of the Federal Rules of Civil Procedure. *See Pelfrey v. Mahaffy*, No. 17-cv-80920-MIDDLEBROOKS/Bran, 2018 U.S. Dist. LEXIS 238521, at *16-17 (S.D. Fla. Feb. 2, 2018) ("In early stages of a civil case it is not uncommon for litigants to change theories, or emphasize certain facts, based upon how litigation evolves" and noting that "'at the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a statute of limitations . . . each party learns more about its case and that of its opponents' which can cause 'some allegations to fall by the wayside as legally or factually unsupported,' however 'this rarely means that those allegations were brought in bad faith or that the pleading that contained them was a sham.'") (quoting *P.A.E. Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007)).

Nonetheless, because Hernandez argued in his prior motion that these allegations were contradictory, Plaintiff elected to save time and resources by clarifying them via the SAC. Doing so is encouraged by the Federal Rules of Civil Procedure, *see Stalley v. ADS All. Data Sys.*, No. 8:11-cv-1652-T-33TBM, 2013 U.S.

6

Dist. LEXIS 78276, at *9 (M.D. Fla. June 4, 2013) (amending "will promote factual accuracy in the pleadings, encourage clarity of the record"); *Khan v. United States*, No. 6:24-cv-1597-WWB-UAM, 2025 U.S. Dist. LEXIS 33459, at *11 (M.D. Fla. Feb. 25, 2025) ("Plaintiff should streamline his pleading, clarify the basis for his claims, and eliminate any unnecessary and irrelevant information"), was not in "bad faith," and in no way justifies dismissal of any claims.

In contrast, Hernandez's argument would require the Court to go back and decide that Plaintiff's earlier pleadings were sufficiently contradictory to warrant dismissal and that Plaintiff somehow knew of the impending dismissal with such certainty that she filed the SAC and added or changed allegations in bad faith to avoid it. Nothing in the record supports that conclusion and, as one court held (and is on point here): "The cases cited by Defendants are particularly inapplicable because in none of those cases did the Court ignore the allegations in the amended complaint, refer solely to the allegation in the original complaint, and then dismiss the amended complaint because the original complaint's allegations were insufficient." *Goldstein v. Firer*, No. 1:20-cv-23402-JEM/Becerra, 2022 U.S. Dist. LEXIS 238274, at *6 (S.D. Fla. May 2, 2022) (referring to same cases Hernandez relies on here).

Hernandez has failed to identify any direct contradictions warranting dismissal of Plaintiff's claims.

### 2. *Plaintiff's Allegations Concerning the Date of the Cliq Agreement are Immaterial*

Hernandez argues that Plaintiff previously alleged that she executed the Cliq Agreement on March 11, 2024, but omitted that allegation from the SAC and replaced it with allegations "implying" that the signature occurred in February

2024. ECF No. 75 at 8-9. According to Hernandez, Plaintiff did this because earlier pleadings alleged fraudulent expenditures that predated the alleged March 11, 2024 signature date of the Cliq Agreement. *Id.* But the signature date of the Cliq Agreement is immaterial for several reasons, including that Plaintiff did not even know the agreement existed and because it was merely a *post-hac*, fraudulent attempt by Defendants to justify the financial fraud they already had committed and planned to commit. ECF No. 54 ¶ 64.

In contrast, the date that Defendants fraudulently took control of Plaintiff funds *is* material to Plaintiff's theft and fraud claims.[5] Based on newly obtained evidence, Plaintiff alleged that Defendants started to take control of her funds on February 3, 2024, and started misappropriating those funds to their own uses four days later. *Id.* ¶¶ 70, 78.

---

[5] *RCG Advances, LLC v. Feingold*, No. 23-81128-CIV-CAN, 2024 U.S. Dist. LEXIS 239303, at *20 (S.D. Fla. Sep. 30, 2024) ("The elements of conversion are (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein."); *Gilead Scis., Inc. v. Ajc Med. Grp., Inc.*, No. 20-24523-CIV-CAN, 2021 U.S. Dist. LEXIS 258567, at *42 (S.D. Fla. Nov. 29, 2021) ("Under Florida law, the essential elements of fraud are: '(1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party.'") (quoting *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984)). Here, Hernandez *inter alia* took control of Plaintiff's funds under false pretenses, including his promise to help her open a bank account in her name only and subject to her control, but instead placed Plaintiff's funds in accounts under Defendants' control. From there, Hernandez used the funds for himself, without Plaintiff's authorization and lied to Plaintiff to disguise and prolong the fraudulent scheme. ECF No. 54 ¶¶ 46-100. Those allegations are more than sufficient to plead conversion, civil theft, and fraud against Hernandez, especially given that Plaintiff alleged the "who, what, when, and where" of Hernandez's fraudulent statements with the requisite specificity. *Alaska v. Ryder Sys.*, 603 F. Supp. 3d 1229, 1236 (S.D. Fla. 2022); *Pro Premium Fin. Co. v. United States Premium Fin. Serv. Co., LLC*, No. 0:16-cv-60009-UU, 2016 U.S. Dist. LEXIS 206112, at *9 (S.D. Fla. June 14, 2016).

8

### 3. *Plaintiff's Allegations Concerning the Transfer of Funds Are Consistent*

Defendant argues that the SAC "concedes that an account was opened for [Plaintiff] by Cliq Management, Plaintiff knew of the existence of the account and requested a check card, funds were not deposited into an account in Hernandez's name, funds were deposited into Plaintiff's Cliq Management Account, Plaintiff knew that funds were deposited into a Cliq Management account, and withdrawals from that account were subject to Plaintiff's approval." ECF No. 75 at 10. That is a gross mischaracterization of Plaintiff's allegations.

Plaintiff alleged that Hernandez fraudulently gained control of Plaintiff's funds by telling her that he would have the other Individual Defendants open a bank account for her, in her name and subject to her exclusive control, such that all withdrawals required her approval. ECF No. 54 ¶ 52. Instead of doing so, and unbeknownst to Plaintiff, the Individual Defendants transferred Plaintiff's funds to accounts held by and in the name of Cliq Management. *Id.* ¶¶ 55, 70-76. Defendants set the accounts up so that one was associated with Hernandez and another account was supposed to be associated with Plaintiff, but all the accounts were in the name of Cliq Management. *Id.* ¶ 68. Plaintiff did not allege that she knew about the accounts or that she knew they were in Cliq Management's name. And contrary to Hernandez's contention, Plaintiff *did* allege that Plaintiff's funds were transferred to Hernandez's Cliq Management account ending x7198. *Id.* ¶ 72. More importantly, Hernandez knowingly obtained and used Plaintiff's funds for himself under false pretenses and without Plaintiff's authorization. *Id.* ¶¶ 73, 78-88, 90; *supra* note 5.

Contrary to Hernandez' argument, Plaintiff did not allege that she asked for a check card for a Cliq Management account. ECF No. 75 at 10. Plaintiff requested a check card for the account she believed Defendants had opened for her—namely, an account in her name only and not an account in Cliq Management's name and subject to Defendants' control. ECF No. 54 ¶¶ 55, 75. But Defendants never created the promised account. Knowing they could not provide Plaintiff with a card for a Cliq Management account without revealing their fraud, "Hernandez told Plaintiff not to worry about the delay in obtaining the bank card since she did not need it because he was wealthy and would pay for all her expenses." *Id.* ¶ 75. In truth, however, Defendants were misappropriating Plaintiff's funds to their own uses. *Id.* ¶¶ 73, 78-88, 90.

Prior pleadings alleged that Hernandez said he would open a bank account for Plaintiff, and the SAC adds that Hernandez said that the account would be in Plaintiff's name only and in her sole control. ECF No. 75 at 11; ECF No. 54 ¶ 52. Contrary to Hernandez's argument, this additional allegation supplements and clarifies (and certainly does not directly contradict) Plaintiff's prior allegations.

### 4. *Plaintiff's Allegations Concerning Defendants' Use of Her Funds Are Consistent*

Hernandez argues that Plaintiff's allegations concerning Defendants' use of the Music Video Funds are vague and contradictory because Plaintiff alleged that Defendants told her that they were paying for the production of Plaintiff's music videos at no cost to her. ECF No. 75 at 11. According to Hernandez, this allegation purportedly "suggests the funds were actually used for their intended purpose" (meaning, the production of Plaintiff's music videos), which, in Hernandez's view,

10

somehow contradicts Plaintiff's allegation that Defendants "pocket[ed] 'all or a substantial portion of the $190,000 Music Video Funds.'" *Id*.

Even if Plaintiff's allegations concerning Defendants' use of the Music Video Funds were "vague" or contradictory (they are not), none of Plaintiff's claims required her to allege what Defendants decided to spend her stolen money on.[6] Moreover, Hernandez's argument that Plaintiff's allegation concerning the Music Video Funds merely "suggests" that the funds were used for another purpose is an admission that the allegation is not in direct contradiction to any other allegation and ignores the fact that all allegations must be construed in the light most favorable to Plaintiff at this stage of the litigation. *VSI Sales, LLC v. Disimone*, No. 20-61119-CIV-CAN, 2021 U.S. Dist. LEXIS 72183, at *1 (S.D. Fla. Apr. 12, 2021); *Royal Palm Optical, Inc. v. State Farm Mut. Auto. Ins. Co.,* 530 F. Supp. 3d 1175, 1176 (S.D. Fla. 2021).

Hernandez argues that he did not convert or misappropriate Plaintiff's Distribution Agreement funds because he used some of those stolen funds in ways that benefited Plaintiff. ECF No. 75 at 11-12. Taking money from others without their authorization and consent is theft, and doing so under false pretenses is fraud, regardless of whether the thief spends some of it in a way that partially

---

[6] How the defendant spent the money is not an element of conversion, civil theft, or fraud. *Supra* note 5. Moreover, "the essence of the tort [of conversion] . . . is the wrongful deprivation." *Nat'l Union Fire Ins. Co. v. Carib Aviation, Inc.,* 759 F.2d 873, 878 (11th Cir. 1985). *FOGADE v. ENB Revocable Tr.,* 263 F.3d 1274, 1291 (11th Cir. 2001) ("Under Florida law a conversion is an unauthorized act which deprives another of his property."). Similarly, civil theft requires only that a defendant knowingly obtained or endeavored to obtain the plaintiff's property "with the intent to deprive the plaintiff of a right to the property or a benefit from the property." *Szterensus v. Bank of Am., N.A.*, No. 08-22669, 2010 U.S. Dist. LEXIS 8229, at *7 (S.D. Fla. Feb. 1, 2010).

benefits the victim. *Supra* notes 5-6. As Plaintiff alleged, she "would not have authorized any of Defendants' expenditures of her money or used her money to pay for any such expenditures." ECF No. 54 ¶ 88.

## B. PLAINTIFF ADEQUATELY ALLEGED HER PRIVACY CLAIMS[7]

Hernandez argues that Plaintiff's privacy claims fail because the SAC does not allege that either Plaintiff's or Jane Doe's images or likenesses were used by Hernandez to promote a separate commercial product or service. ECF No. 75 at 16. In support of this argument, Hernandez cites cases in which the defendants included the plaintiffs' images and likenesses in an expressive work that itself was being sold for a profit (like a book, music, or movie). ECF No. 75 at 16-17. However, the use of the victim's image and likeness in a publication to sell or promote *another product or service* is, as Hernandez's cited cases demonstrate, actionable as an invasion of privacy.[8]

The posting of a person's image and likeness on social media serves a separate commercial purpose when (as here) it is used to promote one's brand and other products or services. *See Binion v. O'Neal*, No. 15-60869-CIV, 2016 U.S. Dist.

---

[7] Counts 5 and 6.

[8] *Valentine v. C.B.S., Inc.*, 698 F.2d 430, 433 (11th Cir. 1983) (no privacy violation because Bob Dylan used plaintiff's name in a song being sold for profit but use of plaintiff's name to promote a different product or service would have constituted a violation); *Tyne v. Time Warner Entm't Co., L.P.*, 204 F. Supp. 2d 1338, 1340 (M.D. Fla. 2002) ("*The Perfect Storm* is an expressive work that has **no commercial advertising purpose**, and is, therefore, outside the scope of the rights protected by § 540.08") (emphasis added); *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1215 (M.D. Fla. 2002) (use of plaintiff's nude image in *Girls Gone Wild* video not actionable because plaintiff consented to recording and images appeared in the same recording being sold).

12

LEXIS 2906, at *12 (S.D. Fla. Jan. 11, 2016); *Gibson v. BTS N., Inc.*, No. 16-24548-Civ-COOKE/TORRES, 2018 U.S. Dist. LEXIS 24132, at *27 (S.D. Fla. Feb. 14, 2018).

For example, in *Binion,* NBA star Shaquille O'Neal posted a picture of the plaintiff on his Instagram and Twitter pages. 2016 U.S. Dist. LEXIS 2906, at *3. O'Neil juxtaposed the plaintiff's expression against an image of O'Neal attempting to imitate it. *Id.* Applying a similar Michigan law, the Southern District of Florida court found that the post served a commercial purpose because it promoted O'Neal's personal brand. *See id.* at *13.

Here, Plaintiff's privacy claims are based on two unauthorized uses of hers and Jane Doe's images and likenesses: **(1)** Hernandez posted a music video of his new song, "La Respuesta," incorporating professional and home videos of Plaintiff and Jane Doe; and **(2)** Hernandez posted a video of Plaintiff and Jane Doe on Instagram Live. ECF No. 54 ¶¶ 111-12, 166-67.

As for the "La Respuesta" video, Plaintiff alleged that Hernandez "used Plaintiff's and Jane Doe's images and likenesses with the intent of promoting himself, his brand, the video, the song, and its sales for commercial purposes, as well as to earn money via 'clicks' and 'likes,'" and further alleged that the video had received more than 33 million views on YouTube. *Id.* ¶ 111.

Similarly, Plaintiff alleged that Hernandez used Plaintiff's and Jane Doe's image in his Instagram post "with the intent of promoting himself, his brand, his social media account, his songs, and their streams and sales for commercial purposes." *Id.* ¶ 112. Plaintiff further alleged that Hernandez "intentionally and purposefully used the images and likeness of Plaintiff and Jane Doe on his

13

Instagram account for his own commercial benefit, including but not limited to, garnering publicity, and more views and streams on his social media, which provide Daniel Hernandez with sources of income *that go beyond the sale of his song*." *Id.* ¶ 167 (emphasis added).

And Plaintiff prefaced all the foregoing allegations by alleging that Hernandez:

> [U]ses his social media accounts for commercial purposes. He earns money based on the number of users who click on his videos and other posts. In addition, he uses his social media accounts to promote sales of his music and streams via apps like Apple Music and to promote his brand (which he uses among other things to earn income from endorsements).

*Id.* ¶ 110.

Unlike the publications in Hernandez's cited cases, Hernandez's posts were not intended to sell the posts themselves. In fact. Hernandez provided free access to the posts, just as sellers provide free access to their advertisements to encourage as many views as possible. Plaintiff alleged that, in his posts, Hernandez used Plaintiffs' and Jane Doe's images and likenesses, without their authorization, to promote separate products or services, including Hernandez himself and his brand. ECF No. 54 ¶¶ 111-12, 166-67. And Hernandez's brand is in fact a separate, commercial interest, as evidenced by the fact that he has trademarked his brand,

14

which resides in his alter ego Tekashi69.[9] Plaintiff's allegations more than suffice to plead her privacy claims.[10]

Moreover, as the Eleventh Circuit has recognized, a privacy claim is actionable, even if the plaintiff appears in the expressive work, if the defendant makes "the editorial choice to include the plaintiffs' images in the videotape, and to make the plaintiffs the focus of their advertisements, by prominently displaying the plaintiffs on the videotape package, in advertisements, and on defendants' websites;" and (2) "the plaintiffs alleged that defendants' marketing efforts were aimed at emphasizing the role of plaintiffs." *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1326 (11th Cir. 2006). Here, both posts feature Plaintiff and Jane Doe prominently and attempt to associate Plaintiff and Jane Doe with Hernandez to promote Hernandez and his brand. ECF No. 54 ¶¶ 111-12.

---

[9] *See* ECF No. 54 ¶ 2; TEKASHI69, Registration No. 6841786; *Nationwide Van Lines, Inc. v. Transworld Movers Inc.*, 853 F. App'x 604, 606 (11th Cir. 2021) ("Taking judicial notice of a public record from the registry of the United States Patent and Trademark Office 'did not transform the motion to dismiss into a motion for summary judgment.'") (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1260 n.2 (11th Cir. 2006)).

[10] *See, e.g.*, *Albert v. Tinder, Inc.*, No. 22-60496-C, 2022 U.S. Dist. LEXIS 139670, at *14 (S.D. Fla. Aug. 4, 2022) ("In his Amended Complaint, Plaintiff asserts that Match Defendants committed statutory and common law misappropriation by publishing without consent his 'images, private activities, likeness, voice, and/or identity on . . . Tinder' in order to 'advertise, promote, market, or endorse Defendants' businesses, groups, pages, applications, events, or activity.' In so pleading, Plaintiff sufficiently alleges the requirements of misappropriation of name and likeness, including that the alleged publication directly promotes Match Defendants' product or service.").

15

## C. PLAINTIFF ADEQUATELY ALLEGED HER IIED CLAIM[11]

Hernandez argues that Plaintiff's IIED claim is not sufficiently independent of her sexual battery, assault, and privacy claims because some of the allegations supporting each of those claims purportedly overlap. Hernandez overstates the rule.

The allegations supporting an IIED claim can overlap with the underlying basis for other claims so long as the IIED claim is also based on additional misconduct that goes beyond what is necessary to allege the other claims. *See Doe v. Royal Caribbean Cruises Ltd.*, Civil Action No. 20-25152-Civ, 2021 U.S. Dist. LEXIS 127790, at *17 (S.D. Fla. July 6, 2021).

For example, in *Doe v. Royal Caribbean Cruises Ltd.*, the plaintiff alleged various claims, including a claim for sexual battery and a claim for IIED. 2021 U.S. Dist. LEXIS 127790, at *17. The court held that the IIED claim was sufficiently independent of the sexual battery claim, even though the IIED claim was based in part on the battery, because the defendant allegedly had "proceeded to intimidate her for hours afterwards through at least one menacing statement and repeated phone calls." *Id.*; *Nygard v. Jasper*, No. 8:15-cv-1939-T-33EAJ, 2016 U.S. Dist. LEXIS 193520, at *11 (M.D. Fla. Jan. 4, 2016)).

Similarly, Plaintiff's IIED claim is not predicated exclusively on Hernandez's battery of her. For example, Plaintiff alleged that, on or about August 23, 2023, Hernandez aggravated his attacks on Plaintiff by threatening to throw her from a balcony in front of Plaintiff's friends and family during Jane Doe's baptism. ECF No. 54 ¶ 31. Similarly, Hernandez used an incident he caused by falsely

---

[11] Count 4.

16

imprisoning Plaintiff to have Plaintiff's visa revoked. *Id.* ¶¶ 36. Hernandez further tortured Plaintiff by convincing her "she was to blame for his violence toward her and that such violence was justified because Plaintiff had a mental illness that left her unable to correctly remember the 'reasons' for his violent acts." *Id.* ¶ 39. Thus, Plaintiff has alleged conduct that extends beyond the allegations underlying her battery and other claims.

Hernandez audaciously claims that his misconduct is not sufficiently outrageous to plead an IIED claim. Beating Plaintiff in front of her family and friends at her daughter's baptism, where Hernandez also threatened to throw Plaintiff from the balcony, alone is sufficiently outrageous under any standard to state an IIED claim,[12] which is based on numerous other outrageous acts.

### D. PLAINTIFF ADEQUATELY PLEADED HER ALTERNATIVE CLAIMS[13]

Hernandez lacks standing to challenge Count 31 for breach of contract because Plaintiff asserted that claim against Cliq Management, not Hernandez. ECF No. 54 ¶ 485. *Se. Constr. & Rehab v. Gac Contractors*, No. 5:20cv132-TKW-MJF, 2021 U.S. Dist. LEXIS 209946, at *5-6 (N.D. Fla. Aug. 4, 2021) ("However, a party only has standing to move to dismiss the claims brought against it.");

---

[12] *Cf. Doe v. Royal Caribbean Cruises Ltd.*, 2021 U.S. Dist. LEXIS 127790, at *17 (finding sexual battery and post-battery conduct sufficiently outrageous and allowing IIED claim to proceed even though based on facts giving rise to privacy claim); *Singleton v. Foreman*, 435 F.2d 962, 971 (5th Cir. 1970) (holding that plaintiff had a claim under Florida law for emotional distress caused by her divorce attorney using heavily abusive language against her "sufficient to cause severe emotional distress to one of ordinary sensibilities"); *Nygard v. Jasper*, 2016 U.S. Dist. LEXIS 193520, at *9-10 (M.D. Fla. Jan. 4, 2016) (holding defendant liable for IIED where he posted false information about plaintiff being engaged in criminal and sexually repugnant acts along with plaintiff's personal information).

[13] Counts 31 and 32.

*United States v. Weatherly*, No. 3:19-cv-802-J-32JRK, 2020 U.S. Dist. LEXIS 87810, at *3-4, 125 A.F.T.R.2d (RIA) 2020-2180 (M.D. Fla. May 19, 2020) (collecting cases).

In any event, "breach of contract may be pleaded in the alternative where **one of the parties** asserts that the contract governing the dispute is invalid." *Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335, 1344 (S.D. Fla. 2020) (emphasis added). Here, the parties dispute the validity and enforceability of the Cliq Agreement. *See* ECF 74 ¶¶ 58-66; ECF 75 ¶¶ 5-9, 18-19; ECF 76 ¶¶ 58-66. Thus, Plaintiff properly alleged in the alternative that, if the finder of fact (somehow) were to conclude that the Cliq Agreement is valid and enforceable, then Plaintiff still would be entitled to a recovery because Cliq Management failed to fulfill its contractual obligations. In other words, Defendants cannot, on the one hand, claim that the Cliq Agreement is enforceable and, on the other, foreclose Plaintiff's ability to pursue a theory of liability if in fact that proves to be correct.

Similarly, Hernandez's challenge to Plaintiff's alternative claim for breach of fiduciary duty (Count 32) is meritless because Plaintiff may plead breach of fiduciary duty in the alternative if the Cliq Agreement is nonetheless found to be valid. *See City Commc'ns, Inc. v. Dailytel, Inc.*, No. 22-CV-81813-LEIBOWITZ/Reinhart, 2024 U.S. Dist. LEXIS 104526, at *30-31 (S.D. Fla. June 12, 2024) (denying motion to dismiss breach of fiduciary claim plead in the alternative because, where the validity and enforceability of the contract is in dispute, "[p]laintiffs can pursue their breach of fiduciary duty claims in the alternative."). That is true especially when, as here, Plaintiff alleged that the Cliq Agreement, if enforceable, created fiduciary duties that all Defendants (including

18

non-signatories to the Cliq Agreement) owed Plaintiff, including as her managers and agents. *See Jabil, Inc. v. Essentium, Inc.*, No. 8:19-cv-1567-T-23SPF, 2020 U.S. Dist. LEXIS 258736, at *21 (M.D. Fla. May 29, 2020).

Hernandez contends that Count 32 only vaguely asserts Defendants' breaches of fiduciary duty but offers only conclusory arguments, *see Deeb v. Saati*, No. 1:17-cv-21204-KMM, 2017 U.S. Dist. LEXIS 186106, at *2 (S.D. Fla. Nov. 8, 2017) (defendant's "conclusory arguments are not sufficient to support his motion to dismiss"), which are refuted by Count 32's incorporation of Hernandez's specifically identified acts of misconduct. ECF No. 54 ¶ 488.

## CONCLUSION

The SAC presents well-pleaded, non-contradictory factual allegations that satisfy both the specificity and plausibility requirements of the Federal Rules and controlling Eleventh Circuit precedent. At this stage, the Court must accept all well-pleaded allegations as true and view them in the light most favorable to Plaintiff. Accordingly, Hernandez's arguments, which rest on unwarranted inferences and misapplications of law, do not support dismissal of any claims. Plaintiff respectfully requests that the Court deny the Motion to Dismiss.

Dated: July 31, 2025
Miami, Florida

                                                         REED SMITH LLP

                                                         A. Scott Bolden, Esq. (*pro hac vice*)
                                                         Rizwan A. Qureshi, Esq. (*pro hac vice*)
                                                         1301 K Street NW
                                                         Suite 1000, East Tower
                                                         Washington, DC 20005
                                                         Telephone: (202) 414-9200
                                                         Fax: (202) 414-9299
                                                         Email: abolden@reedsmith.com

Email: rqureshi@reedsmith.com

*s/ Daniel A. Sox, Esq.*
Daniel A. Sox, Esq.
Florida Bar No: 108573
200 South Biscayne Boulevard
Suite 2600
Miami, FL 33131
Telephone: (786) 747-0200
Email: dsox@reedsmith.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by CM/ECF on July 31, 2025, on all counsel or parties of record on the service list.

*s/ Daniel A. Sox, Esq.*