UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-81151-AMC

JORGINA LULU GUILLERMO DIAZ,
    *Plaintiff,*

vs.

DANIEL HERNANDEZ,
a/k/a 6ix9ine,
a/k/a TEKASHI69,
    *Defendant.*
_____/

**DEFENDANT, DANIEL HERNANDEZ'S, REPLY IN SUPPORT OF
MOTION TO DISMISS COUNTS 4-6, 8-13, 17-22, 26-30, AND 31-32 OF
<u>PLAINTIFF'S SECOND AMENDED COMPLAINT [ECF NO. 75]</u>**

Respectfully submitted,

**BLACK SREBNICK**
201 South Biscayne Boulevard, Suite 1300
Miami, Florida 33131 / Ph. (305) 371-6421

By:   <u>/s *Lisandra Guerrero*</u>
    HOWARD SREBNICK
    Florida Bar No. 919063
    E-mail: HSrebnick@RoyBlack.com

    LISANDRA GUERRERO
    Florida Bar No. 0098521
    E-mail: LGuerrero@RoyBlack.com

*Counsel for Defendant, Daniel Hernandez*

I.  **Counts 8-13, 17-22, and 26-30 – Plaintiff's Fraud and Conversion Counts Should be Dismissed.**

   a. **Plaintiff's Contradictory Allegations Should Be Disregarded.**

As an initial matter, Plaintiff asserts the Court is powerless to consider contradictions in her pleadings unless they were made either to "avoid[] a dispositive defense raised by a defendant" or as a "bad faith attempt to amend a claim that was already dismissed." ECF No. 88 at 2. She argues those circumstances are absent here because Hernandez "has not identified an affirmative defense that Plaintiff allegedly is attempting to avoid via the SAC, and none of Plaintiff's claims against Defendant has ever been dismissed." *Id*. at 3. But there is no such threshold requirement. *Castillo v. Fisher Island Club, Inc.*, 2021 WL 12313359, at *2 (S.D. Fla. Aug. 2, 2021) ("As a general rule, a plaintiff ... may not plead facts in their amended complaint that contradict those in their original complaint."). Moreover, Plaintiff ignores that Hernandez filed a Motion to Dismiss Plaintiff's Amended Complaint because the claims failed as a matter of law based on the facts as pled. *See* ECF No. 43. In seeking leave to file the SAC, Plaintiff *was* attempting to avoid those dispositive defenses. *See* ECF No. 51 at 7 (Under the heading "The Proposed Amendment Addresses Defendant's Motion to Dismiss Arguments," Plaintiff argued that "the Proposed Amendment adds allegations that should eliminate any purported pleading deficiencies."); ECF No. 88 at 6 ("[B]ecause Hernandez argued in his prior motion that these allegations were contradictory, Plaintiff elected to save time and resources by clarifying them via the SAC.").

Because Plaintiff "changed tack to plead around dismissal," this Court has authority to determine whether Plaintiff's amended pleading is "an attempt to use the federal courts as a forum for testing alternate legal theories seriatim, which our precedent forbids." *Marchelletta v. Bergstrom,* 752 F. App'x 724, 733 (11th Cir. 2018) (internal quotations omitted). Regardless,

where, as here, "[m]any of the allegations in the Second Amended Complaint directly contradict facts alleged in the original Complaint and First Amended Complaint,"[1] this Court may "disregard the contradictory and manipulated allegations of an amended pleading,"[2] consider "the pertinent facts … as they previously appeared,"[3] or, at the very least, direct Plaintiff and her counsel to "conduct a reasonable inquiry and submit filings containing allegations which are warranted by existing law and which they believe in good faith to be true after discussing the matters with the Plaintiff as required by Fed. R. Civ. P. 11(b)(2)."[4]

Plaintiff responds by providing a series of confusing explanations in an attempt to recast them as "clarifications" or brushing them off as immaterial.[5] With respect to the nature of the Cliq Agreement, the pleadings tell totally incompatible stories. In Plaintiff's original and First Amended Complaints, Plaintiff alleged that she *knew* she was signing a management agreement on March

---

[1] *Castillo*, 2021 WL 12313359, at *2.

[2] *Rubinstein v. Keshet Inter Vivos Tr.*, 2018 WL 8899230, at *5 (S.D. Fla. Oct. 17, 2018), *report and recommendation adopted,* 2018 WL 8899004 (S.D. Fla. Nov. 15, 2018).

[3] *Fernandez v. Sch. Bd. of Miami-Dade Cnty.*, 201 F. Supp. 3d 1353, 1361 n.1 (S.D. Fla. 2016)

[4] *Castillo*, 2021 WL 12313359, at *3

[5] Plaintiff also attempts to draw a distinction between *direct* and *indirect* contradictions and imply a "direct contradiction" requirement. ECF No. 88 at 3 ("Plaintiff's new allegations do not contradict (let alone directly contradict) allegations in her prior pleadings."). As explained below, Plaintiff directly contradicts her prior allegations. Regardless, there is no such requirement. *Fernandez v. Sch. Bd. of Miami-Dade Cnty.*, 201 F. Supp. 3d 1353, 1361 (S.D. Fla. 2016)(" And while the allegations in the Second Amended Complaint do not explicitly **contradict** the allegations in the prior versions—given that the references to the unlawful reprisal proceedings have simply been removed—the Court has found no Eleventh Circuit authority that would bar the invocation of this exception under these specific circumstances—where plaintiffs have manipulated the allegations in their pleadings to avoid a dispositive defense. Therefore, the Court will recite the pertinent facts here as they previously appeared.") (emphasis in original).

11, 2024, and alleged why she did so: (1) because Hernandez claimed her existing managers were "stealing" and promised to take care of her finances (ECF No. 1 at ¶ 93; ECF 10 at ¶ 110); (2) because he insisted "her career would be over" if she did not permit him to manage her (ECF Nos. 1 and 10 at ¶ 37); and (3) because "the arrangement would insulate them" from IRS scrutiny (*id*.). Plaintiff then alleged reliance on those assurances. She claimed she "credited and relied on" his promise to "competently manage" her finances, "unlike her other managers." ECF No. 1 at ¶ 95; ECF No. 10 at ¶ 112.[6] That narrative presupposes assent to a management relationship and attempts to plead a fraud in the inducement theory.

The SAC abandons those stories altogether. Plaintiff now claims she was told the signature page was merely a bank signature card needed to open an account. ECF No. 54 at ¶ 61. She denies knowing about the existence of any agreement at all and alleges she "did not hire, contract, or agree to pay any Defendant to perform any services," nor authorize anyone to control or spend her funds. *Id*. at ¶¶ 65, 73. Those are not clarifications; they are opposite facts underlying a different legal theory. *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 995 (11th Cir. 2012) (quoting *Browning v. Fla. Hometown Democracy, Inc., PAC,* 29 So.3d 1053, 1061 n. 4 (Fla. 2010) (noting fraud in the inducement arises from misrepresentation that leads one to enter a contract

---

[6] Indeed, Plaintiff testified as much. ECF No. 75-1 at 22:19-21 ("Q: And at one point did Mr. Hernandez manage your music career? A: Yes."). Her attorney made consistent representations to this Court. *Id*. at 9: 14-15, 73: 23-25, 76: 13-14 (Explaining that Hernandez "became [Plaintiff's] manager or his company became her manager" (*id*. at 9:14-15), that Hernandez "was [Plaintiff's] manager at one point and took complete control of her career," and that Plaintiff "essentially turned her business, personal and emotional life, over to" Hernandez"). And the signature page bears Cliq Management's logo and signature line. ECF No. 75 at 8.

"with a false impression of the risks, duties, or obligations involved," while fraud in the factum arises "when a legal instrument executed differs from the one intended for execution."[7]

Moreover, "there's more than one flat out contradiction here." *Marchelletta*, 752 F. App'x at 733. The same is true with respect to Plaintiff's allegations concerning the date the Cliq Agreement was executed, how much money was "stolen,"[8] the trajectory of the funds, and the expenditure of the funds. *See* ECF No. 57 at 8-11.

Recognizing this, Plaintiff contends she "could have changed her theory entirely without running afoul of the Federal Rules of Civil Procedure." ECF No. 88 at 6 (citing *Pelfrey v. Mahaffy*, 2018 WL 3110794 (S.D. Fla. Feb. 2, 2018)). *Pelfrey* is inapposite because, unlike here, it involved factual allegations that were "not necessarily inconsistent" and "[f]undamentally … the same." *Pelfrey*, 2018 WL 3110794 at *5. As the Eleventh Circuit has held:

> It is one thing to present inconsistent theories of relief in one pleading. It is another thing entirely to test a legal theory on one set of alleged facts, lose and suffer an adverse judgment, and then use the first decision as a roadmap to alter the alleged facts, and then re-plead post-judgment. Our caselaw does not 'countenance the old sporting theory of justice or the use of the federal courts as a forum for testing alternate legal theories *seriatim*.'

*Marchelletta v. Bergstrom*, 752 F. App'x 724, 733–34 (11th Cir. 2018) (quoting *Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1042 (11th Cir. 2006)).

---

[7] Plaintiff tries to rationalize the shift by arguing that the SAC merely "supplements" allegations of incapacitation, and that her earlier allegations about IRS "insulation," threats that her "career would be over," and promises to "take care of her finances" unlike her "stealing managers," were merely color to "describe her chaotic state of mind and vulnerability in and around the time she signed the Cliq Agreement[.]" ECF No. 88 at 5-6. But her prior allegations were substantive inducement representations allegedly made to secure her assent.

[8] ECF No. 1 at ¶¶ 3, 4, 28, 60 ("hundreds of thousands of dollars"); ECF No. 10 at ¶¶ 3, 21, 28, 60 ("millions of dollars"); ECF No. 54 at ¶ 6 (removing any monetary amount and referring to "huge sums of money").

### b. The SAC is a Shotgun Pleading and Fails to Satisfy the Heightened Pleading Standard.

Far from containing a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and giving the "defendant fair notice of what the claim is and the ground upon which it rests," *Castillo*, 2021 WL 12313359, at * 1, Plaintiff's contradictory allegations, changing theories, and confusing Response explanations make it impossible for Hernandez to discern the nature of the claims asserted against him, rendering the Second Amended Complaint an impermissible shotgun pleading that also fails to satisfy the applicable heightened pleading standard.

The purpose of Rules 8(a)(2) and 10(b) is "to require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not." *Weiland v. Palm Beach Cnty. Sherriff's Off.*, 792 F. 3d 1313, 1320 (11th Cir. 2015). Moreover, as to fraud-based claims, Fed. R. Civ. P. 9(b) requires parties to "state with particularity the circumstances constituting fraud or mistake." "Plaintiff must identify the who, what, when, where, and how of the fraud." *Blatt*, 2024 WL 4228433, at *11.

Plaintiff's pleadings do the opposite. For the most part, they fail to differentiate as to "who" engaged in any particular transaction. They oscillate between different "whats," ("hundreds of thousands," "millions of dollars," or "huge sums of money"), they change the "when" (March 11, 2024 or February, 2024) and they shift the "where" (Hernandez's account, Plaintiff's account, or multiple Cliq accounts). *See Blatt v. Goldner*, 2024 WL 4228433, at *6 (S.D. Fla. Aug. 21, 2024),

*report and recommendation adopted*, 2024 WL 4225481 (S.D. Fla. Sept. 18, 2024) ("Ultimately, each Count is bogged down with general allegations which, at best fail to provide clarity and, at worst, contradict that which forms the basis for a given Count."); *Silberman v. Premier Beauty & Health LLC*, 2021 WL 4312698, at *5 (S.D. Fla. Sept. 22, 2021) (dismissing fraudulent inducement claim for failure "to satisfy the heightened pleading standard of Rule 9(b)" due to "inconsistent allegations about who made the false statements[.]"). Because Plaintiff's core stolen-funds theory changes from pleading to pleading and remains insufficient, Counts 8-13, 17-22, and 26-30 should be dismissed.

## II. Count 4 – Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress.

Plaintiff's Count 4 is not an independent tort; it is a label pasted onto the very same factual nucleus that underlies her other counts. Although Plaintiff asserts that Count 4 includes "additional misconduct" that "extends beyond the allegations underlying her battery and other claims," (ECF No. 88 at 16-17), the very conduct she cites as "additional" *does* form the basis for her other claims. *See* ECF No. 54 at ¶ 143 (Count 3 for Assault) ("On August 23, 2023 at the baptism of Jane Doe, Daniel Hernandez threatened to throw Plaintiff from a balcony after punching her."); *Id*. at ¶ 175 (Count 7 for False Imprisonment) ("On December 14, 2023, Daniel Hernandez and his security team confined Plaintiff on Daniel Hernandez's property in Palm Beach County. Upon Plaintiff's wishes to return to the Dominican Republic, Daniel Hernandez confiscated Plaintiff's passport and money."). Because Plaintiff's Count 4 identifies no independent set of facts beyond those already pleaded in the underlying torts, it should be dismissed. Moreover, Plaintiff's cursory, one-line proclamation that the alleged conduct is "sufficiently outrageous under any standard" ignores, and fails to grapple with, the authorities cited in Hernandez's motion, including cases dismissing IIED

claims on similar or more extreme facts. *See* ECF No. 75 at 14, n. 5, 6, and 7. Having offered no response to that precedent, Plaintiff provides no legal basis to sustain Count 4, which should be dismissed.

### III.    Counts 5 and 6 – The Invasion of Privacy Counts Fail as a Matter of Law.

Florida's right-of-publicity statute, Fla. Stat. § 540.08, targets the use of a person's name or likeness "to directly promote a commercial product or service, ***separate and apart from the publication***." *Fuentes v. Mega Media Holdings, Inc.*, 721 F. Supp. 2d 1255, 1258 (S.D. Fla. June 30, 2010) (emphasis added). Acknowledging that neither the "La Respuesta" music video nor the Instagram Live clip advertises any product or service, Plaintiff pivots to Hernandez's act of posting, asserting that social media posting "serves a separate commercial purpose when (as here) it is used to promote one's brand and other products or services." ECF No. 88 at 12.

As an initial matter, Plaintiff fails to identify any "other products or services" she claims the postings promoted. *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1325 (11th Cir. 2006) ("Courts have interpreted the statute's commercial purpose requirement to require that a defendant's unauthorized use 'directly promote' a product or service."); *Fuentes v. Mega Media Holdings, Inc.*, 721 F. Supp. 2d 1255, 1259 (S.D. Fla. 2010) ("[T]he publication is harmful not simply because it is included in a publication that is sold for profit, but rather because of the way it associates the individual's name or his personality with something else."). Because there is no other product or service being directly or indirectly promoted and nothing else that Plaintiff's name is being associated with, Plaintiff's vague assertion of unidentified "products or services" is insufficient.

Plaintiff's attempt to recast social-media posting as generic "brand promotion" fares no better. Florida law requires a direct product-endorsement use that is "separate and apart from the

publication," not mere publicity, clout, or views.[9] Indeed, *Almeida* underscores that incidental display of content online does not create § 540.08 liability. There, the plaintiff alleged that Amazon's posting of a book cover containing her photograph was done "for the purpose of promoting … the retailer's brand identity." *Almeida*, 456 F. 3d at 1325. The Eleventh Circuit disagreed, holding that "Amazon did not use [the plaintiff's] image for the purpose of directly promoting a product or service in violation of section 540.08." *Id*. at 1326.

Plaintiff's reliance on *Binion v. O'Neal*, 2016 WL 111344 (S.D. Fla. Jan. 11, 2026) and *Albert v. Tinder, Inc.*, 2022 WL 18776124 (S.D. Fla. Aug. 5, 2022) is entirely misplaced. *Binion* involved an appropriation claim under Michigan law which, unlike Florida's § 540.08 framework, does *not* contain a commercial purpose requirement. *Binion*, 2016 WL 111344 at *4-5. The conduct, moreover, was a standalone, mocked reposting of a private individual's photo to a celebrity's social-media account, and not an expressive work (*e.g.*, a music video) that Florida authority places outside § 540.08 liability. Likewise, *Albert* did not involve the dissemination of an expressive work. It involved defendants' use of the plaintiff's image on a fake Tinder profile to market their dating platform—*i.e.*, a direct commercial advertising use that fit Florida's requirement that the use directly promote a product or service. Ultimately, *Binion* and *Albert* did not hold that generic social-media "brand building" creates liability under Florida law. Therefore, they provide no support for Plaintiff's theory here.

---

[9] *Loft v. Fuller*, 408 So. 2d 619, 623 (Fla. 4th DCA 1981) ("While we agree that at least one of the purposes of the author and publisher in releasing the publication in question was to make money through sales of copies of the book and that such a publication is commercial in that sense, this in no way distinguishes this book from almost all other books, magazines or newspapers and simply does not amount to the kind of commercial exploitation prohibited by the statute.").

## IV. Counts 31 and 32 – The Alternative Breach of Fiduciary Duty Theory is Inadequately Pled.[10]

Plaintiff argues that she can plead breach of contract and breach of fiduciary duty claims in the alternative where the validity and enforceability of the Cliq Agreement is disputed. ECF No. 88 at 18. But Plaintiff disclaims the existence of any contract at all. The SAC asserts:

> It is unclear what the Cliq Agreement is or what its terms are, if any. Plaintiff did not see the Cliq Agreement, assent to its terms, or even know of its existence until recently, when she obtained pages from a document that may be part of what Defendants claim is the Cliq Agreement. But it is unclear whether those pages even existed at the time of Plaintiff's signature or whether the Cliq Agreement was anything more than just a signature page, to which Defendants intended to draft, edit, and attach any terms that suited them, including as necessary after the fact to try and justify their malfeasance. Based on the pages Plaintiff obtained, it appears that Defendants were trying fraudulently to make it appear that Plaintiff had authorized Cliq Management to become her manager.

ECF No. 54 at ¶ 64. And Plaintiff further alleges that she "did not hire, contract, or agree to pay any Defendant to perform any services." *Id*. at ¶ 65. Against those allegations, Plaintiff's reliance on alternative-pleading cases misses the point. Alternative pleading allows inconsistent theories; it does not excuse a party from sufficiently alleging the elements of each theory. *Wilson v. EverBank, N.A.,* 77 F. Supp. 3d 1202, 1220 (S.D. Fla. 2015) ("While Plaintiffs are entitled to plead in the alternative, they cannot dispute the authenticity of documents they submit to the Court for consideration and which are fundamental to their claims."); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1322 (S.D. Fla. 2014) (same).

---

[10] "Plaintiff argues that Hernandez lacks standing to challenge County 31 for breach of contract because Plaintiff asserted that claim against Cliq Management, not Hernandez." ECF No. 88 at 17. Hernandez moved to dismiss Count 31 in an abundance of caution due to Plaintiff's subsequent allegation that "Daniel Hernandez [is] not protected by Cliq Management's corporate form" and "Daniel Hernandez…dominated and controlled Cliq Management such that Cliq Management did not have an independent existence from Daniel Hernandez[.]" ECF No. 54 at ¶ 491. To the extent Plaintiff stipulates that she does not and will not seek to hold Hernandez liable under Count 31, Hernandez withdraws the portion of the Motion to Dismiss directed solely at Count 31.

Claim alleging breaches of duties owed under a contract still require well-pled facts showing contract formation and the essential terms allegedly breached. Here, Plaintiff pleads neither the formation facts (offer, acceptance, consideration) nor any specific term Hernandez supposedly breached. *Vega v. T-Mobile USA, Inc.*, 564 F. 3d 1256, 1272 (11th Cir. 2009) ("To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms.").

Instead, she denies any contract exists and offers only the conclusory refrain that "Defendants owned (sic) Plaintiff's (sic) fiduciary duties as Plaintiff's agents and managers," and "breached those fiduciary duties, including by stealing from and defrauding Plaintiff." ECF No. 88 at ¶¶ 489-90. That is not a plausible contract claim even in the alternative. *Ermolaev v. Happy Land FL, LLC*, 2021 WL 7084645, at *5 (S.D. Fla. Apr. 16, 2021) (Cannon, J.) (Finding breach of contract claim to be vague and stating that "it would it behoove Plaintiff to provide at least some factual allegations to identify the alleged material breach(es) asserted[.]"). Therefore, Plaintiff has failed to state breach of contract and breach of fiduciary duty claims, such that Counts 31 and 32 should be dismissed.

## CONCLUSION

For the foregoing reasons, Counts 4-6, 8-13, 17-22, 26-30, and 31-32 of Plaintiff's Second Amended Complaint (ECF No. 54) should be dismissed with prejudice.