UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:24-cv-81151-CANNON

JORGINA LULU GUILLERMO DIAZ, on behalf of herself and her minor daughter JANE DOE,

    *Plaintiff*,

v.

DANIEL HERNANDEZ,
a/k/a 6ix9ine,
a/k/a Tekashi69, *et al.*,

    *Defendants*.

**PLAINTIFF'S SUPPLEMENTAL BRIEF**

Plaintiff Jorgina Lulu Guillermo Diaz respectfully submits this Supplemental Brief in Support of the Second Amended Complaint (the "SAC"), ECF No. 54.[1] Plaintiff agrees that Fed. R. Civ. P. 9(b) applies to almost all the claims at issue, which, satisfy (and far exceed) Rule 9(b)'s standard as alleged. Regardless, dismissal would be unwarranted as to Plaintiff's constructive fraud, conversion, civil theft, and related aiding and abetting and conspiracy claims, because those claims are actionable independently of the allegedly fraudulent conduct and because two other defendants have filed their Answer to those claims.

## I. THE PLEADING STANDARDS

Plaintiff agrees that her fraud and related conspiracy claim—**Count 26 and 27**—*are* subject to Rule 9(b)'s heightened pleading standard. Plaintiff's constructive fraud claim and her related aiding and abetting and conspiracy claims—**Counts 28-30**—are *not* subject to Rule 9(b),[2] though Plaintiff acknowledges there is a split of authority on this point. Plaintiff agrees that her conversion and civil theft claims, as well as the related aiding and abetting and conspiracy claims—**Counts 8-13**, **17-22**—*are* subject to Rule 9(b) because they "sound in fraud," however, those claims (as well as the constructive fraud claims) would survive even in the absence of the fraudulent conduct that otherwise subjects them to Rule 9(b)'s standard.[3]

---

[1] ECF No. 100 ("[T]he parties shall submit Supplemental Briefs . . . on the pleading standard applicable to Counts 8-13, 17-22, and 26-30 as briefed in the operative pleading and the sufficiency of the allegations under those standards.").

[2] *Yuanxiao Feng v. Walsh*, No. 19-24138-CIV, 2020 U.S. Dist. LEXIS 169654, at *37 (S.D. Fla. Sep. 14, 2020) (Rule 9(b) does "not apply to claims of constructive fraud," even if "rooted in fraud"); *Eli Lilly & Co. v. Tyco Integrated Sec., LLC*, No. 13-80371-CIV, 2015 U.S. Dist. LEXIS 191652, at *9 (S.D. Fla. Feb. 9, 2015) ("Courts here and elsewhere have declined to apply the Rule 9(b) requirements to . . . claims of constructive fraud, which do not require proof of a knowingly false action by the defendant."); *Medytox Diagnostics, Inc. v. Samuels*, No. 14-CIV-20719, 2014 U.S. Dist. LEXIS 197174, at *15-16 (S.D. Fla. July 18, 2014) (applying Rule 8 to constructive fraud claim alleging that defendants "fraudulently abused" duties); *Razi v. Razavi*, No. 5:12-CV-80-Oc-34PRL, 2012 U.S. Dist. LEXIS 187072, at *47 (M.D. Fla. Dec. 13, 2012) (applying Rule 8 though claim sounded in fraud).

[3] For instance, even assuming Defendants had obtained control over Plaintiff's funds by non-fraudulent means, they still **(a)** committed constructive fraud by subsequently using Plaintiff's funds to engage in self-interested and unauthorized transactions, *supra* note 2; *infra* note 9, and

2

"But even under [Rule 9(b)], the 'conditions of a person's mind,' including knowledge, 'may be alleged generally,'" *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1178 (11th Cir. 2025), and "we must construe all facts and inferences in the light most favorable to the nonmoving party." *Id.* at 1188.

## II. PLAINTIFF ADEQUATELY ALLEGED HER CLAIMS

Regardless of whether and to what extent Rule 9(b) applies, Plaintiff adequately pleaded her claims with particularity. The SAC alleges *inter alia* a fraudulent scheme by Daniel Hernandez (and all Defendants)[4] to **(i)** take control of two sets of funds, referred to in the SAC as the "Distribution Agreement Funds" and the "Music Video Funds;" **(ii)** transfer the funds to Cliq Management and its bank accounts, all of which Defendants created to execute their scheme; **(iii)** spend all of Plaintiff's funds for their own benefit; and **(iv)** conceal their misconduct. *See generally* ECF No. 54 ¶¶ 22, 46-100.

---

**(b)** committed conversion and civil theft by failing to return Plaintiff's funds upon demand, *compare Benessere Inv. Grp., LLC v. Swider*, No. 24-CV-21104-RAR, 2025 U.S. Dist. LEXIS 172330, at *31 (S.D. Fla. Sep. 4, 2025) (conversion "demonstrated by a plaintiff's demand for return of the property and a defendant's refusal") (citation omitted), *with* ECF No. 54 ¶¶ 187, 199, 217, 229, 279, 293, 313, 327 (alleging demand and refusal), or by asserting wrongful dominion over the funds inconsistent with Plaintiff's ownership interest in them by subsequently transferring the funds to themselves and third parties. *Euclid Turnaround Opp. Fund LP v. Amerant Equip. Fin.*, No. 25-CV-20647-BLOOM/Elfenbein, 2025 U.S. Dist. LEXIS 197560, at *58 (S.D. Fla. Oct. 6, 2025) ("The 'essence of the tort is not the acquisition of the property' but the 'wrongful deprivation.'") (quoting *Nat'l Union Fire Ins. Co. v. Carib Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir. 1985)). At minimum, this demonstrates that, even if the SAC failed to satisfy Rule 9(b) (it did not), dismissal with prejudice would be unwarranted because Plaintiff can plead her existing claims and other claims (like breach of fiduciary duty) in the absence of fraud. Though the SAC is Plaintiff's second amendment, it is the first substantive amendment, it is the first amendment to include defendants other than Daniel Hernandez and claims for secondary liability, and the prior amendment occurred before any defendant appeared in the case.

[4] This Brief focuses primarily on the allegations against Daniel Hernandez because it arises from Daniel Hernandez's Motion to Dismiss, ECF Nos. 75, 100; Defendants Oscar Hernandez and Mohamed B. Zaied have filed their Answer to the SAC, ECF No. 74; and the clerk entered a default against Defendant Cliq Management LLC ("Cliq Management"). ECF No. 85.

### A. <u>Fraud</u> (Count 26)

Rule 9(b) "can be satisfied by 'facts as to time, place, and substance of the defendants' alleged fraud' and 'details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them.'" *Gilead Scis., Inc. v. Ajc Med. Grp., Inc.*, No. 20-24523-CIV-CAN, 2021 U.S. Dist. LEXIS 258567, at *38-39 (S.D. Fla. Nov. 29, 2021).[5]

**The SAC satisfies (and far exceeds) each of these requirements by:**

- Alleging **(a)** the <u>amount of the Distribution Agreement Funds</u> ($290,000), **(b)** the <u>source</u> of the funds (contract between Plaintiff and Equity Distribution LLC), **(c)** <u>where</u> the funds were located and <u>when</u> (Iris Live for Plaintiff's benefit, May 2023), **(d)** and <u>when</u> Defendants took possession of the funds (February-March 2024). ECF No. 54 ¶¶ 46, 50, 70.

- Alleging **(a)** the <u>amount of the Music Video Funds</u> ($190,000), **(b)** the <u>source</u> of the funds (the Distribution Agreement), **(c)** the <u>purpose</u> of the funds (Plaintiff's allotment for music videos), and **(d)** approximately <u>when</u> Defendants transferred the funds to themselves (mid-March 2024). *Id.* ¶ 82.

- Alleging that Defendants had no rights to the Distribution Agreement or Music Video Funds. *Id.* ¶ 48.

---

[5] *Daniels v. Fiddlesticks Country Club, Inc.*, No. 2:25-cv-324-SPC-KCD, 2025 U.S. Dist. LEXIS 157179, at *6-7 (M.D. Fla. Aug. 14, 2025) (false statements, their "general time frame," who they were made to, how were misleading, and what defendant gained are sufficient under Rule 9(b)); *Kuehne v. FSM Cap. Mgmt., LLC*, No. 12-80880-CIV-ROSENBAUM/SELTZER, 2013 U.S. Dist. LEXIS 60672, at *11 (S.D. Fla. Apr. 29, 2013) ("Plaintiff need not articulate verbatim the particular fraudulent statements made or the time and place of making them."); *Resort v. Twin Vee Catamarans, Inc.*, No. 17-CV-23895-HUCK, 2018 U.S. Dist. LEXIS 251336, at *10-12 (S.D. Fla. Jan. 22, 2018) (plaintiff satisfied the "what" by alleging that "Defendants misrepresented the safety and weight bearing capacity of the Vessel," even though plaintiff "did not allege the specific amount of weight and passengers that were misrepresented" and the "when" by alleging misrepresentations occurred during "the several month period prior to April 28, 2016 . . . through June 15, 2017").

4

- Identifying the <u>objectives and motives</u> of each person involved in the fraudulent scheme (Daniel Hernandez broke, needed money for lavish lifestyle; Oscar Hernandez and Zaied wanted money for themselves). *Id.* ¶¶ 21, 54, 389.

- Alleging Daniel Hernandez's <u>false statements and omissions</u> concerning the Distribution Agreement Funds and <u>when</u> he made them, including Hernandez's statements to Plaintiff between May 2023 and February 2024 that "he would help Plaintiff by asking Oscar Hernandez and Zaied to open a bank account for Plaintiff in her name only and subject to her exclusive control" and "that he would use his celebrity and influence to get Iris Live to transfer the Distribution Agreement Funds to [that] new account." *Id.* ¶¶ 50-53, 378, 380, 384, 387-88, 390-391; *infra* notes 10-11.

- Alleging Daniel Hernandez's <u>false statements and omissions</u> respecting the Music Video Funds, including his failure to inform Plaintiff that he had fraudulently requested and obtained the funds from Equity Distributions. *Id.* ¶¶ 82-83, 385, 387-88; *infra* note 6.

- Alleging facts establishing that Defendants owed Plaintiff <u>fiduciary duties</u>, including an <u>affirmative</u> duty to fully and fairly inform Plaintiff, including because Defendants **(a)** had superior knowledge, **(b)** knew that Plaintiff was vulnerable, and **(c)** undertook control of the Distribution Agreement and Music Video Funds.[6]

---

[6] ECF No. 54 ¶¶ 22-23, 41, 54 (Plaintiff's vulnerable state and lack of knowledge), ¶ 91 ("Defendants owed Plaintiff fiduciary duties, including a heightened duty of care, loyalty, and honesty, because they gained Plaintiff's trust, told her that they would help her open her personal bank account, and took control of her funds."), ¶ 390 ("Having taken control of Plaintiff's funds, each Defendant had a duty to disclose the other Defendants' wrongful conduct to Plaintiff. Instead, each Defendant worked to perpetuate their fraudulent scheme and benefit from it."); *Otto*, 137 F.4th at 1185 ("Fraud also includes the intentional omission of a material fact."); *Cap. Bank v. Mvb*, 644 So. 2d 515, 520 (Fla. 3d DCA 1994) ("[T]he fiduciary 'cannot appeal to the doctrine of caveat emptor' and that it is insufficient to merely refrain from misrepresenting facts. Rather, the fiduciary has an affirmative duty to 'disclose fairly and honestly to the client all the facts which might be presumed to influence him.'"); *infra* note 9.

- Alleging Plaintiff's <u>reliance</u> on Daniel Hernandez's false statements and omissions and <u>why</u> she relied on them, *id.* ¶¶ 376, 392, including **(a)** her vulnerable state, *id.* ¶¶ 22, 41 (abuse), ¶ 51 (newly divorced, infant daughter, limited cash, no bank account, no financial experience, not a U.S. citizen, did not speak English), and **(b)** "Daniel Hernandez was famous and (falsely) held himself out to Plaintiff and the public as being wealthy, so Plaintiff reasonably believed that Defendants, including Daniel Hernandez's brother (Oscar) and friend/business partner (Zaied), would help her and would not take acts to defraud her." *Id.* ¶ 54.

- Alleging <u>how and when Defendants executed their scheme</u>, including **(a)** <u>how</u>, <u>why</u>, and <u>when</u> Defendants created the corporate structure and bank accounts used to execute their scheme, *id.* ¶¶ 57, 68; **(b)** tracing Defendants' transfer of Plaintiffs' funds, including with dates and account numbers, from Iris Live to Cliq Management and into an account designated for Daniel Hernandez, *id.* ¶¶ 69, 70-72; **(c)** alleging <u>how</u> and <u>when</u> each Defendant benefitted from the scheme and spent Plaintiff's funds, including for their personal benefit, *id.* ¶¶ 78-87; and **(d)** <u>how</u> the transfers and expenditures conflicted directly with the fraudulent omissions and statements made to Plaintiff. *Id.* ¶¶ 72-73, 78-83, 88, 384; *infra* notes 7, 10-11.

- Alleging <u>how</u> Defendants <u>used Cliq Management and the signature page of the Cliq Agreement</u>, including by alleging facts establishing that **(a)** the Cliq Agreement was nothing more than a signature page to which Defendants intended to attach and remove additional pages and terms as needed to make it appear as if Plaintiff had authorized Cliq Management (and thus Defendants) to take control of and spend her funds, *id.* ¶¶ 64, 383; **(b)** Daniel and Oscar Hernandez used the Cliq Agreement to fraudulently convince Equity Distributions that they were authorized to request and receive the Music Video Funds, without Plaintiff's knowledge or approval, *id.* ¶¶ 82-83, 385; **(c)** Daniel and Oscar Hernandez fraudulently obtained Plaintiff's signature on the signature page of the Cliq Agreement, *id.* ¶¶ 58-63, 383; **(d)** Defendants used

6

Cliq Management and the Cliq Agreement to hide the fact that they were using Plaintiff's stolen funds for their personal use under the guise of business expenses.[7]

- Alleging each Defendants' attempts to <u>conceal</u> the fraudulent scheme, as well as <u>additional fraudulent statements</u>, their <u>purposes</u>, <u>who</u> made them, and <u>when</u> they were made. ECF No. 54 ¶¶ 74-75, 77-81, 90, 92-93, 100, 375-95.[8]

### B. **Constructive Fraud** (Count 28)

"[C]onstructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken." *MX Advisors, Inc. v. Edge AJG, LLC*, No. 23-14144-CIV, 2025 U.S. Dist. LEXIS 5276, at *21 (S.D. Fla. Jan. 10, 2025) (quoting *Oculus Optikgerate Gmbh v. Insight Instruments, Inc.*, No. 12-14394-CIV, 2013 U.S. Dist. LEXIS 192368, at *2 (S.D. Fla. Feb. 13, 2013)).

"[T]he term 'fiduciary relation' is a broad term that embraces both technical fiduciary relations and informal relations." *Fla. Bar v. Adorno*, 60 So. 3d 1016, 1027-28 (Fla. 2011). As such, "the principle of fiduciary duty 'extends to *every possible case* in which there is confidence reposed on one side and the resulting superiority and influence on the other.'" *Id*. (quoting *Quinn v. Phipps*, 93 Fla. 805, 113 So. 419, 421 (Fla. 1927)) (emphasis added).[9]

---

[7] *Compare* ECF No. 54 ¶¶ 55, 57 (Oscar Hernandez and Zaied created Cliq Management, a supposed management company, and bank accounts specifically to hold the Distribution Agreement Funds), *and id.* ¶ 64 (alleging Daniel and Oscar Hernandez coerced Plaintiff to sign the signature page of Cliq Agreement to make it seem that Cliq Management and Defendants were her managers), *with id.* ¶¶ 78-88 (alleging how Defendants spent from the Cliq Accounts to pay personal expenses). Moreover, it is implausible that Defendants believed that they there were entitled to spend all of Plaintiff's funds on themselves or for their own benefit.

[8] Hernandez's argument that the SAC is a "shotgun" pleading, ECF No. 75 at 3-4, ignores the numerous paragraphs identifying which defendant performed each alleged act, *see, e.g.*, ECF No. 54 ¶¶ 51-54, 56-62, 67-70, 72, 74, 75, 77-82, 89, 93-94, 378-83, 385, 388-90, 393, and the fact that each count summarizes the supporting allegations. *See, e.g.*, *id.* ¶¶ 375-95.

[9] "[T]he relationship and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal." *Earls v. Johnson*, 172 So. 2d 602, 603 (Fla. 2d DCA 1965); *Oculus,* 2013 U.S. Dist. LEXIS 192628, at *6-7 ("To establish a confidential or fiduciary relationship, [] must 'allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party'") (quoting

**The SAC satisfies each of these elements by alleging facts establishing that Daniel Hernandez (and all Defendants):**

• Owed Plaintiff fiduciary duties pursuant to a confidential relationship, including an <u>affirmative</u> duty to fully and fairly inform Plaintiff with respect to their expenditures of the Distribution Agreement and Music Video Funds, because Defendants **(a)** had superior knowledge, whereas Plaintiff was the weaker party, especially in her vulnerable state and given her lack of knowledge, *supra* note 6; **(b)** undertook to help Plaintiff, ECF No. 54 ¶¶ 50-55, 69, 70-72, 184, 378, 380, 384, 387-88, 390-391, *supra* note 6, who relied on Defendants, ECF No. 54 ¶¶ 41, 50-53; and **(c)** undertook control of the Distribution Agreement and Music Video Funds, including subject to Plaintiff's instructions. *Id.* ¶¶ 70-73, 82-83; *supra* note 7.

• Abused this confidential relationship, including by **(a)** spending all of Plaintiff's funds, including for their own benefit; **(b)** lying to Plaintiff and stealing from her; **(c)** concealing their misconduct; and **(d)** inducing Plaintiff to sign the signature page of the Cliq Agreement while incapacitated. *Id.* ¶¶ 55-69, 70-75, 78-88, 90-100, 417-38; *supra* note 7.

C. **Conversion and Civil Theft (Counts 8, 11, 17, 20)**

"The elements of conversion are (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *RCG Advances, LLC v. Feingold*, No. 23-81128-CIV-CAN, 2024 U.S. Dist. LEXIS 239303, at *20 (S.D. Fla. Sep. 30, 2024). "Conversion may be demonstrated by a plaintiff's demand for return of the property and a defendant's refusal." *Benessere*, 2025 U.S. Dist. LEXIS 172330, at *31. "[A] 'claim for civil theft is conversion plus felonious intent.'" *Bostic v. Bodie*, No. 24-10126, 2025 U.S. App. LEXIS 12139, at *11 (11th Cir. May 20, 2025).

---

*Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So.2d 536, 540 (Fla. 5th DCA 2003)); *Duncan v. Rushmore Loan Mgmt. Servs., LLC*, No. 6:20-cv-1524-CEM-GJK, 2021 U.S. Dist. LEXIS 258960, at *14-15 (M.D. Fla. Sep. 30, 2021).

**The SAC satisfies each of these elements by alleging, with particularity, numerous facts establishing that: (a)** the Distribution Agreement and Music Video Funds were Plaintiff's property, ECF No. 54 ¶¶ 46, 48, 50, 70, 82; **(b)** Daniel Hernandez (and all Defendants) wrongfully asserted dominion and control over the Distribution Agreement and Music Video Funds, *id.* ¶¶ 55-69, 70-75, 78-88, 90-100, 417-38; **(c)** Defendants undertook an obligation to keep Plaintiff's funds intact and transfer them only in accordance with her specifications, *id.* ¶¶ 53-55, 69, 70-72, 182,184; **(d)** Daniel Hernandez (and all Defendants) used the Distribution Agreement and Music Video Funds for their own benefit, without Plaintiff's knowledge or consent, *id.* ¶¶ 78-88; **(e)** Defendants failed to comply with Plaintiff's demands to return her funds, *id.* ¶¶ 76, 187, 199, 217, 229, 279, 293, 313, 327; and **(f)** [Civil Theft Only] Daniel Hernandez (and all Defendants) acted intentionally, including as evidenced by the acts each took in advancing the scheme, the timing of their actions, the benefits they received through their participation, the fact that it is implausible that they believed they legitimately could spend all of Plaintiff's money on themselves, and the acts each took to cover up the scheme. *Supra* notes 6-7; ECF No. 54 ¶¶ 55-69, 70-75, 77-87, 90-100, 181-189, 210-219; *infra* notes 7, 10-11.

### D. Aiding and Abetting Claims (Counts 10, 13, 19, 22, 30)

"Under Florida law, a claim for aiding and abetting fraud requires: (1) the existence of an underlying fraud, (2) that the defendant had knowledge of the fraud, and (3) that the defendant provided substantial assistance to advance the commission of the fraud." *Gilead*, 2021 U.S. Dist. LEXIS 258567, at *45. The knowledge element "may be alleged generally." *Euclid*, 2025 U.S. Dist. LEXIS 197560, at *44 (quoting *Otto*, 137 F.4th at 1206). "A defendant has knowledge of an underlying fraud if it has a general awareness that its role was part of an overall improper activity." *Otto*, 137 F.4th at 1178 (quoting *Gilison v. Flagler Bank*, 303 So. 3d 999, 1003 (Fla. 4th DCA 2020)). "Substantial assistance" may be inferred from the

complaint's allegations, *Euclid*, 2025 U.S. Dist. LEXIS 197560, at *88, and includes "helping conceal" the misconduct "or failing to act when required to do so." *Id.* at 60-61.

Here, the SAC adequately alleges the underlying fraud, conversion, civil theft, and constructive fraud with particularity. *Supra* Sections II(A)-(C). And the SAC adequately alleges Daniel Hernandez's knowledge of and direct participation in the misconduct both generally and by alleging the specific ways in which he substantially assisted in such misconduct.[10] The same is true for Oscar and Zaied.[11]

### E. Conspiracy Claims

Under Florida law, the essential elements of civil conspiracy are: (1) a conspiracy between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to the plaintiff

---

[10] ECF No. 54 ¶¶ 21, 51 (abuse left Plaintiff weakened and vulnerable), ¶ 52 (touted experiences and connections with intent to isolate and conceal, and convinced Plaintiff that Iris Live could not be trusted so she would agree to allow transfer of funds to her account), ¶¶ 53-55 (falsely told Plaintiff that he, Oscar, and Zaied would create bank account for Plaintiff in her name only and subject to her exclusive control, where her funds would not and could not be touched except by her), ¶¶ 58-63 (coerced Plaintiff to execute signature page while incapacitated), ¶ 64 (use of signature page to commit and conceal fraud), ¶ 68 (Cliq Management bank account dedicated for Daniel's use), ¶ 72 (Plaintiff's funds transferred to Daniel Hernandez's Cliq Management Account), ¶ 74 ("knowingly and intentionally created fake accounting statements to continue defrauding Plaintiff."), ¶ 75 (false statement concerning bank card to conceal fraud), ¶¶ 77-81, 97-99 (false statements concerning use of Plaintiff's funds), ¶ 82 (false statements and omissions by Daniel and Oscar Hernandez related to Music Video Funds and use by Defendants of such funds), ¶¶ 84-88 (additional ways in which Daniel Hernandez and all Defendants used the Distribution Agreement and Music Video Funds for their benefit), ¶ 92 (falsely telling in house accountant that transfers from Plaintiff's account were for expenses covered by the Cliq Agreement), ¶ 93 (frequently combined embezzlement and fraud with abuse.); *see also* ¶¶ 202-209, 232-243, 297-305, 331-343, 461-484. In addition, the fact that Defendants created a brand new entity (*i.e.* Cliq Management) and its brand new bank accounts the same month they obtained the Distribution Agreement Funds and approximately one month before obtaining the Music Video Funds and then proceeded to spend all of the Distribution Agreement and Music Video Funds (*i.e.* Plaintiff's money) on themselves within approximately five months, *id.* ¶ 50, 57-58, 67-73, 78-83, 97-99, further establishes that Defendants were aware of, engaged in, and benefited from their fraudulent scheme. Also, the SAC establishes Hernandez's failure to act despite his obligation to do so. *Supra* notes 6-7, 9.

[11] *See, e.g.*, ECF No. 54 ¶¶ 56-64, 67-72, 74, 82, 84-89, 92, 100; *supra* notes 6-7, 9.

as a result of the acts done under the conspiracy." *Otto*, 137 F.4th at 1204. "Each coconspirator need not act to further a conspiracy; each need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators." *Id.* (quoting *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1160 (Fla. 3rd DCA 2008)). Though "conspiracy allegations require some degree of inference, district courts must read[] plausible inferences in the plaintiffs' favor." *Id.* at 1206.[12] An agreement to participate in a conspiracy may be inferred from the co-conspirator's knowledge of the conspiracy's objectives, acts taken in furtherance of the conspiracy, close association between the parties, and direct financial incentives. *Otto*, 137 F.4th at 1205.

Here, the SAC adequately alleges the underlying fraud, conversion, civil theft, and constructive fraud with particularity, *supra* Sections II(A)-(C), and adequately alleges that the conspiracy involved two or more parties. *Supra* notes 10-11. The SAC further alleges Daniel Hernandez's (and all Defendants') overt acts in furtherance of the conspiracy and how those acts demonstrate his knowledge of and agreement to participate in the conspiracy. *Supra* notes 7, 10-11. In addition, as in *Otto*, 137 F.4th at 1205, the SAC alleges the coconspirators' close association, ECF No. 54 ¶¶ 54, 57, 68-69, 70-72, and the direct incentives they received through their participation. *Id.* ¶¶ 78-88.

## CONCLUSION

The SAC adequately alleges all of Plaintiff's claims, regardless of whether and to what extent Rule 9(b)'s pleading standard applies to them.

---

[12] *Euclid*, 2025 U.S. Dist. LEXIS 197560, at *86-87 ("But there is also an interpretation that favors Plaintiff and an inference that be readily made from these allegations: specifically, because of the timing and obfuscation, all those actions circumstantially show that the Alliance Defendants knew about Ecliptica's conversion of Plaintiff's equitable interest in the Notes and Guarantees.").

Dated: November 5, 2025
Miami, Florida

        REED SMITH LLP

        A. Scott Bolden, Esq. (*pro hac vice*)
        Rizwan A. Qureshi, Esq. (*pro hac vice*)
        1301 K Street NW
        Suite 1000, East Tower
        Washington, DC 20005
        Telephone: (202) 414-9200
        Fax: (202) 414-9299
        Email: abolden@reedsmith.com
        Email: rqureshi@reedsmith.com

        *s/Daniel A. Sox*
        Daniel A. Sox
        Florida Bar No: 108573
        200 South Biscayne Boulevard
        Suite 2600
        Miami, FL 33131
        Telephone: (786) 747-0200
        Email: dsox@reedsmith.com

        *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by CM/ECF on November 5, 2025, on all counsel or parties of record on the service list.

        *s/Daniel A. Sox, Esq*.