**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 24-81151-CIV-CANNON**

**JORGINA LULU GUILLERMO DIAZ,**
*on behalf of herself and her minor*
*daughter* **JANE DOE,**

Plaintiffs,
v.

**DANIEL HERNANDEZ,**
**A/K/A 6IX9INE,**
**A/K/A TEKASHI69,**
**OSCAR HERNANDEZ,**
**MOHAMED B. ZAIED,** and
**CLIQ MANAGEMENT LLC,**

Defendants.
_________________________________/

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANT DANIEL HERNANDEZ'S MOTION TO DISMISS**

**THIS CAUSE** comes before the Court upon Defendant Daniel Hernandez's Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion") [ECF No. 75]. The Court has reviewed the Second Amended Complaint [ECF No. 54], the Motion, Plaintiff's Opposition [ECF No. 88], and Defendant's Reply [ECF No. 92]. The Court also heard oral argument on the Motion during a hearing in October 2025 [ECF No. 99], and has considered the parties' post-hearing supplemental briefing [ECF Nos. 101, 102].[1] Having carefully reviewed the written submissions, the record, and the applicable law, and being fully advised in the premises, the Motion is **GRANTED IN PART AND DENIED IN PART**.

[1] The transcript of the hearing is not on the docket but is cited to in this Order using the following convention: Tr. __.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Jorgina Lulu Guillermo Diaz ("Plaintiff") initiated this action on September 19, 2024, by filing a Complaint against Defendant Daniel Hernandez a/k/a 6ix9ine, a/k/a Tekashi69 ("Hernandez") [ECF No. 1]. The initial Complaint alleged claims arising from alleged physical abuse, coercive control, unauthorized dissemination of explicit content, and diversion of significant income from Plaintiff's music career [ECF No. 1 pp. 1–4]. Among various averments, Plaintiff alleged that Hernandez exerted control over both her personal life and her professional finances and used such control to fraudulently misappropriate Plaintiff's funds (including distribution-contract proceeds, music-video funds, and social-media monetization) for his own purposes without Plaintiff's consent [ECF No. 1 pp. 4–10].

Shortly after filing suit, Plaintiff sought emergency injunctive relief to prevent Hernandez from disseminating explicit material and to require removal of certain videos already posted on the internet [ECF No. 11 pp. 1–3]. The Court held an evidentiary hearing and thereafter granted in part and denied in part the motion [ECF No. 17]. Specifically, the Court enjoined Hernandez under 15 U.S.C. § 6851 from reposting one video containing sexually explicit content ("Video 1"), ordered its removal, and required Hernandez to take reasonable steps to prevent further circulation [ECF No. 26 p. 8]. The Court denied relief as to two other videos and deferred ruling on any financial relief [ECF No. 26 pp. 1–6].

On October 4, 2024, before Hernandez accepted service, Plaintiff filed a First Amended Complaint ("FAC") as a matter of right under Rule 15 of the Federal Rules of Civil Procedure [ECF No. 10]. The FAC clarified the factual basis for the emergency relief request [ECF No. 51 p. 2]. Hernandez then moved to dismiss the FAC [ECF No. 43] and filed counterclaims for battery, assault, conversion, civil theft, non-consensual intimate image sharing (15 U.S.C. § 6851), and

unjust enrichment [ECF No. 44]. Plaintiff thereafter moved for leave to amend, and on February 4, 2025 [ECF No. 51], the Court granted leave and authorized the filing of the operative Second Amended Complaint ("SAC") [ECF Nos. 53–54].

The SAC expands the case significantly. It adds three new defendants—Oscar Hernandez, Mohamed Zaied, and Cliq Management LLC—and asserts 32 separate causes of action involving alleged physical abuse, emotional abuse, financial abuse, financial fraud, and unauthorized use of Plaintiff's likeness, among other things [ECF No. 54 pp. 1–4]. These counts are listed below:

- Count 1 – Nonconsensual Pornography in Violation of 15 U.S.C. § 6851 (against Hernandez) [ECF No. 54 ¶¶ 115–123].
- Count 2 – Battery/Sexual Assault (against Hernandez) [ECF No. 54 ¶¶ 124–138].
- Count 3 – Assault (against Hernandez) [ECF No. 54 ¶¶ 139–147].
- Count 4 – Intentional Infliction of Emotional Distress ("IIED") (against Hernandez) [ECF No. 54 ¶¶ 148–155].
- Count 5 – Unauthorized Publication of Name or Likeness (Fla. Stat. § 540.08) (against Hernandez) [ECF No. 54 ¶¶ 156–164].
- Count 6 – Invasion of Privacy – Misappropriation (against Hernandez) [ECF No. 54 ¶¶ 165–173].
- Count 7 – False Imprisonment (against Hernandez) [ECF No. 54 ¶¶ 174–179].
- Count 8 – Conversion of Distribution Agreement Funds (against All Defendants) [ECF No. 54 ¶¶ 180–189].
- Count 9 – Conspiracy to Commit Conversion of Distribution Agreement Funds (against All Defendants) [ECF No. 54 ¶¶ 190–201].
- Count 10 – Aiding and Abetting Conversion of Distribution Agreement Funds (against All Defendants) [ECF No. 54 ¶¶ 202–209].
- Count 11 – Conversion of Music Video Funds (against All Defendants) [ECF No. 54 ¶¶ 210–219].
- Count 12 – Conspiracy to Commit Conversion of Music Video Funds (against All Defendants) [ECF No. 54 ¶¶ 220–231].
- Count 13 – Aiding and Abetting Conversion of Music Video Funds (against All Defendants) [ECF No. 54 ¶¶ 232–243].
- Count 14 – Conversion of Valuables (against Oscar Hernandez and Hernandez) [ECF No. 54 ¶¶ 244–251].
- Count 15 – Conspiracy to Commit Conversion of Valuables (against Oscar Hernandez and Hernandez) [ECF No. 54 ¶¶ 252–260].

- Count 16 – Aiding and Abetting Conversion of Valuables (against Oscar Hernandez and Hernandez) [ECF No. 54 ¶¶ 261–271].
- Count 17 – Civil Theft of Distribution Agreement Funds (against All Defendants) [ECF No. 54 ¶¶ 272–283].
- Count 18 – Conspiracy to Commit Civil Theft of Distribution Agreement Funds (against All Defendants) [ECF No. 54 ¶¶ 284–296].
- Count 19 – Aiding and Abetting Civil Theft of Distribution Agreement Funds (against All Defendants) [ECF No. 54 ¶¶ 297–305].
- Count 20 – Civil Theft of Music Video Funds (against All Defendants) [ECF No. 54 ¶¶ 306–317].
- Count 21 – Conspiracy to Commit Civil Theft of Music Video Funds (against All Defendants) [ECF No. 54 ¶¶ 318–330].
- Count 22 – Aiding and Abetting Civil Theft of Music Video Funds (against All Defendants) [ECF No. 54 ¶¶ 331–343].
- Count 23 – Civil Theft of Valuables (against Hernandez and Oscar Hernandez) [ECF No. 54 ¶¶ 344–352].
- Count 24 – Conspiracy to Commit Civil Theft of Valuables (against Hernandez and Oscar Hernandez) [ECF No. 54 ¶¶ 353–362].
- Count 25 – Aiding and Abetting Civil Theft of Valuables (against Hernandez and Oscar Hernandez) [ECF No. 54 ¶¶ 363–374].
- Count 26 – Fraud (against All Defendants) [ECF No. 54 ¶¶ 375–395].
- Count 27 – Conversion – Additional Sets of Funds (against All Defendants) [ECF No. 54 ¶¶ 396–416].
- Count 28 – Civil Theft – Additional Sets of Funds (against All Defendants) [ECF No. 54 ¶¶ 417–438].
- Count 29 – Conspiracy to Commit Constructive Fraud (against All Defendants) [ECF No. 54 ¶¶ 439–460].
- Count 30 – Aiding and Abetting Constructive Fraud (against All Defendants) [ECF No. 54 ¶¶ 461–484].
- Count 31 – Breach of Contract (against Cliq Management LLC) [ECF No. 54 ¶¶ 485–487].
- Count 32 – Breach of Fiduciary Duty (against All Defendants) [ECF No. 54 ¶¶ 488–491].

In the instant Motion, Hernandez moves to dismiss Counts 4–6, 8–13, 17–22, 26–30, and 31–32 [ECF No. 75], arguing that Plaintiff's allegations in her fraud-based claims, Counts 8–13, 17–22, and 26–30, are "irreconcilably inconsistent" with her earlier pleadings in this action and thus should be disregarded from the Court's Rule 12(b)(6) consideration of Plaintiff's SAC [ECF No. 75 p. 2]; that Plaintiff's SAC represents a shotgun pleading "calculated to confuse the enemy"

[ECF No. 75 p. 3 (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)] because "Plaintiff's shifting story and confusing allegations make it impossible for Hernandez to discern, and thereby defend against, Plaintiff's claims" [ECF No. 75 p. 2]; that Plaintiff's fraud-based claims in Counts 8–13, 17–22, and 26–30 fail to meet the applicable heightened pleading standard under Federal Rule of Civil Procedure 9(b) [ECF No. 75 pp. 2, 5, 9]; that Plaintiff's IIED claim (Count 4) and statutory and common law invasion of privacy claims (Counts 5 and 6) fail as a matter of Florida law [ECF No. 75 pp. 2, 15–17]; and that Plaintiff's breach of contract and fiduciary duty claims (Counts 31 and 32) fail because Plaintiff largely disputes the very existence of the contract underlying those claims and also "fail[s] to identify any contractual terms that were allegedly breached" [ECF No. 75 pp. 2, 18–19]. Plaintiff rejects the notion of any material contradiction between pleadings [ECF No. 88 pp. 1–12] and defends the plausibility of the allegations in the SAC, both under regular pleading standards [ECF No. 88 pp. 12–19] and 9(b)'s heightened pleading standard [ECF No. 101 pp. 3–11]. The Motion, which is ripe for adjudication, is brought by Defendant Hernandez alone; Defendant Cliq Management is in default [ECF No. 85], and Defendants Oscar Hernandez and Zaied have answered [ECF No. 74].

## LEGAL STANDARDS

Rule 8(a)(2) requires complaints to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal under Rule 12(b)(6), a complaint must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 12(b)(6). A claim for relief is plausible if the complaint contains factual allegations that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]onclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b)'s heightened pleading standard also applies when a claim "sounds in fraud" based on the allegations "underlying the claim." *See Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1293–94 (11th Cir. 2025) (applying Rule 9(b)'s heightened pleading standard because the claims at issue sounded in fraud). The heightened pleading standard requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means that a claim subjected to this heightened pleading requirement must allege: "'(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled [plaintiff]; and (4) what the defendants gained by the alleged fraud.'" *Cisneros v. Perland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020) (quoting *Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1291 (11th Cir. 2010)).

## DISCUSSION

### I. Plaintiff's SAC Controls.

As a prefatory matter, Hernandez asks the Court to disregard substantial portions of the SAC—or strike the entire SAC—on the theory that it contains statements that "directly contradict" Plaintiff's prior pleadings, her prior sworn testimony during the evidentiary hearing on Plaintiff's Motion for Preliminary Injunction [ECF No. 17], and the terms and/or circumstances surrounding the Cliq Management Agreement (which gave Hernandez the authority to manage and control Plaintiff's funds) [ECF Nos. 75 pp. 6–11; *see* Tr. 16]. Hernandez acknowledges the ordinary

principle that a subsequent pleading supersedes any prior pleading. *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) ("As a general matter, an amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." (quotation and punctuation omitted)). But she says the degree of the alleged inconsistencies in this case is so clear as to warrant deviating from the general rule by either (a) conducting a paragraph-by-paragraph deletion of the current complaint; (b) requiring counsel to refile a complaint after an additional due-diligence check (over and above the Rule 11 imperative implicit in the signed pleading); or (c) striking the entire pleading under this theory. Plaintiff opposes these bold requests, describing the SAC as merely clarifying and supplementing the allegations based on new information obtained following the prior pleading as a result of further investigation [ECF No. 88 pp. 1–11; Tr. 10]. Plaintiff also submits that Defendant has not identified any paragraph in the SAC that meets the strict criteria for disregarding amended allegations [ECF No. 88 p. 3].

"As a general matter, 'an amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'" *Pintando*, 501 F.3d at 1243 (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006)). Moreover, "the Federal Rules do not prohibit contradictory pleadings." *Seiger by & through Seiger v. Philipp*, 735 F. App'x 635, 637 (11th Cir. 2018); *see also* Fed. R. Civ. P. 8(d) (permitting pleadings to contain "alternative statements of a claim or defense" and "inconsistent claims or defenses"). It is true, in the context of determining whether to grant leave to amend a pleading under the liberal amendment standard in Rule 15, that courts have exercised discretion to consider obvious contradictions in pleadings as part of an "undue delay" or "bad faith" inquiry. *See Foman v. Davis*,

371 U.S. 178, 182 (1962) (allowing courts to deny amendment for reasons like "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment"); *Marchelletta v. Bergstrom*, 752 F. App'x 724, 733 (11th Cir. 2018) (affirming denial of leave to amend on bad faith grounds where proposed amendment directly contradicted prior pleading already dismissed by the court, and hence litigant was using "federal courts as a forum for testing alternative legal theories seriatim"). But the Court is aware of no Eleventh Circuit authority, nor does Hernandez cite any, giving courts discretion under Rule 12(b)(6) to strike, "red pencil," or otherwise disregard authorized complaints on the basis of contradictory or different allegations as compared to a prior pleading.[2] *Cf. PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 859 (9th Cir. 2007) ("The district court has no free-standing authority to strike pleadings simply because it believes that a party has taken inconsistent positions in the litigation. Rather, the district court's powers are generally limited to those provided by the Federal Rules of Civil Procedure.").

Upon review of the parties' positions and the authorities cited, the Court sees no basis to do as Hernandez suggests on a Rule 12(b)(6) motion—either through "red penciling" the SAC to delete paragraphs (or portions of paragraphs), striking the SAC in its entirety, or ordering Plaintiff's counsel to refile a pleading after conducting another due diligence review [Tr. 16].

Most importantly, Hernandez cites no authority authorizing any of those requested avenues

[2] Rule 12(f) does provide a mechanism to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," but Hernandez does not move under that rule or provide a basis to do so. There is also some nonbinding caselaw on "sham pleadings" whereby courts have exercised discretion to strike pleadings with obviously false allegations or other palpable bad faith. *See generally* 61A Am. Jur. 2d Pleading § 379 (discussing the striking of sham or frivolous pleadings). Hernandez does not invoke that doctrine either; nor does Hernandez imply a Rule 11 violation or seek sanctions under Rule 11.

in the context presented: a Rule 12(b)(6) motion to dismiss a pleading the Court already granted leave to file. That reality alone is reason enough to deny Hernandez's invitation to exercise free-wheeling authority to change or strike Plaintiff's SAC.

Alternatively, even if the Court had the power to redline or strike the SAC as requested, none of the cited inconsistencies rises to the level of an obvious or bad faith "about-face" warranting such drastic relief. Admittedly, there are some differences between Plaintiff's earlier complaints and the SAC concerning (1) the circumstances and timing of the Cliq Management Agreement, (2) Plaintiff's understanding of what she was signing, and (3) the transfer and use of distribution and video-production funds [ECF No. 75 pp. 6–12]. But those variations are either not discrete enough, not pervasive enough, or not material enough to warrant striking allegations or reverting to prior pleadings, assuming the Court had the authority to do so. It is not explicitly clear, for example, what particular paragraphs or subsidiary allegations in the SAC would need to be stricken to cure the purported inconsistencies. Nor is it clear, as briefed by Hernandez, how the Court would even go about dissecting the SAC to determine what to strike or delete [Tr. 16–17]. All things considered, although Plaintiff's allegations generate some reason to question Plaintiff's evolving understanding of the facts of this case, Plaintiff has plausibly explained that any differences between pleadings stems from a good-faith effort to clarify and/or supplement information gleaned after submission of the earlier pleading [Tr. 10; ECF No. 88 pp. 2–12].

Accordingly, the Court declines Hernandez's invitation to strike allegations, disregard portions of the SAC, or to revert to prior pleadings, and proceeds to evaluate the Motion based on Plaintiff's operative SAC, which in the normal course displaces the prior pleadings under Rule 15 and binding Eleventh Circuit precedent. Fed. R. Civ. P. 15.

## II. Plaintiff's claim for intentional infliction of emotional distress in Count 4, as narrowed by this Order, states a plausible claim under Florida law.

Count 4 alleges that Hernandez intentionally inflicted severe emotional distress on Plaintiff through a months-long course of physical and emotional abuse, including physical assaults, "gaslighting," release of sexually explicit content to humiliate and threaten her, coercive control over her physical appearance, drugging, isolation from friends and family, and constant verbal abuse [ECF No. 54 ¶¶ 148–155]. The SAC also asserts separate claims based on much of that same conduct, including through Count 1 for nonconsensual pornography under 15 U.S.C. § 6851, Count 2 for battery/sexual battery, Count 3 for assault, and Count 7 for false imprisonment [ECF No. 54 ¶¶ 115–164, 174–179].

Hernandez offers two reasons why Count 4 fails to state a claim for IIED. First, Hernandez argues that Count 4 is an "imperfect repetition" of other claims in the SAC because it rests entirely on the same allegations of assault, battery, coercive control, and unauthorized dissemination of explicit content already pled in Counts 1, 2, 3, 5, 6, and 7 [ECF No. 75 p. 14 ("[A]ll of these allegations already form part of the claims asserted in Counts One (Nonconsensual Pornography in Violation of 15 U.S.C. § 6851), Two (Battery/Sexual Battery), Three (Assault), Five (Unauthorized Publication in Violation of Fla. Stat. § 540.08), and Six (Invasion of Privacy-Misappropriation); Tr. 18–19 (adding Count 7 to list of duplicative claims as compared to Count 4)]. Second, Hernandez says that Count 4, even if not duplicative, nevertheless does not meet Florida's "exceptionally high" standard for outrageousness as required to state a claim for IIED [Tr. 27; ECF No. 75 pp. 12–13]. Plaintiff responds that allegations underlying Count 4 go "beyond what is necessary to allege the other claims" and include additional misconduct, such as gaslighting, humiliation, and alienation, all of which supports an independent IIED theory [Tr. 27; *see* ECF No. 88 pp. 15–17] and thus is "not predicated exclusively on Hernandez's battery of her"

[ECF No. 88 p. 16].

In Florida, a Plaintiff alleging the tort of IIED must allege the following elements: "(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015) (quoting *Gallogly v. Rodriguez*, 970 So. 2d 470, 471 (Fla. Dist. Ct. App. 2007)). In defining what constitutes outrageous conduct, "Florida courts have looked to [] Section 46 of the Second Restatement of Torts." *McCray v.* Holt, 777 F. Supp. 945, 947 (S.D. Fla. Oct. 28, 1991) (stating that comments to Section 46 guide Florida courts in deciding whether conduct is outrageous); *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985) (using the comments to Section 46 to determine whether or not conduct at issue meets the definition of outrageous conduct). Section 46 notes that "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Restatement (Second) of Torts § 46 (1965). Rather, liability requires that such conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

Importantly, any viable claim for IIED in Florida must "set forth an *independent* tort for the recovery of damages for emotional distress." *Boyles v. Mid-Fla. Television Corp.*, 431 So. 2d 627, 636 (Fla. Dist. Ct. App. 1983), *approved*, 467 So. 2d 282 (Fla. 1985); *Lavis Plumbing Servs. Inc. v. Johnson*, 515 So. 2d 296, 297 (Fla. Dist. Ct. App. 1987) (stating that IIED claims require an independent tort). Put another way, a claimant cannot plead a claim of IIED using factual

allegations that are violative of another alleged tort; nor can a claim of IIED lie where the conduct alleged to be outrageous is itself a pleaded tort. *See Johns Hopkins All Children's Hosp., Inc. v. Kowalski*, 425 So. 3d 645, 664–65 (Fla. Dist. Ct. App. 2025) (emphasizing that an IIED claim "must be independent of any other alleged tort" and remanding for a new trial where plaintiff would not be allowed to prove IIED using evidence supporting other torts) (citing *Foshee v. Health Mgmt. Assocs*., 675 So. 2d 957, 960 (Fla. Dist. Ct. App. 1996) ("Intentional infliction of mental distress . . . can be defined, loosely, as any outrageous conduct emotionally injurious to the claimant, *which conduct is not violative of any other recognized tort*." (emphasis added)).[3]

Applied here, the question presented by the Motion is whether Plaintiff has alleged facts in support of her IIED claim that are distinct and independent from those alleged in Plaintiff's other tort claims (Count 2 for battery/sexual battery, Count 3 for assault, and Count 7 for false imprisonment[4])—and then, assuming such independent conduct exists, whether that conduct

[3] *See also id.* ("Because the actions of the chargeable defendants here can be deemed to fit within the false imprisonment category those actions will not support a claim of intentional infliction of emotional distress."); *cf. Fridovich v. Fridovich*, 598 So. 2d 65, 69–70 (Fla. 1992) ("[I]f the sole basis of a complaint for emotional distress is a privileged defamatory statement, then no separate cause of action exists . . . . [A] plaintiff cannot transform a defamation action into a claim for intentional infliction of emotional distress simply by characterizing the alleged defamatory statements as 'outrageous.'" (citation omitted)); *Klayman v. Judicial Watch, Inc.*, 13-cv-20610, 22 F. Supp. 3d 1240, 1257 (S.D. Fla. May 23, 2014) (dismissing IIED claim where Plaintiff had not shown "the existence of any independent facts, distinct from the subject of his defamation claim, on which he base[d] [the IIED claim]").

[4] Consistent with Florida law, *supra*, the Court conducts this independent-tort analysis as between Count 4 and Plaintiff's analogous *tort* claims—not as between Plaintiff's analogous statutory claims in Counts 1 and 5. So, although Count 4 undoubtedly relies in part on the same facts underlying the statutory nonconsensual pornography claim in Count 1 [*see* Tr. 24], the Court declines to go beyond what Florida says in this area, which is to limit IIED claims where such IIED claims duplicate other *tort* claims. The same result obtains as to Count 5 (Fla. Stat. § 540.08 – unauthorized commercial/trade publication of name or likeness), another statutory claim, which (contrary to Hernandez's assertion, and as an additional matter) does not even overlap factually with Count 4. *Compare* ECF No. 54 ¶¶ 148–155, *with* ECF No. 54 ¶¶ 156–173.

viewed as a whole (and accepted as true) qualifies as sufficiently "outrageous" to state a plausible claim for IIED under Florida law. The full scope of Count 4 appears in Paragraphs 148 through 155 of the SAC, quoted in full below:

> 148. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-114 as if fully set forth herein.[5]
>
> 149. Daniel Hernandez committed outrageous and atrocious conduct towards Plaintiff, through a pervasive, months-long campaign of violent physical abuse and extreme emotional abuse.
>
> 150. Daniel Hernandez's abusive actions toward Plaintiff, include, but are not limited to, violently assaulting Plaintiff on multiple occasions; gaslighting her to convince her that this violent abuse was in fact her fault; releasing pornographic sexual content of Plaintiff to humiliate and threaten her, including in front of the whole world and Plaintiff's family; degrading and controlling Plaintiff's physical appearance to the point of coercing her to undergo unnecessary cosmetic surgery; drugging Plaintiff; consciously working to alienate Plaintiff from her friends and relatives, so as to increase her dependence on Daniel Hernandez; and belittling and humiliating Plaintiff during the course of the parties' relationship via constant verbal abuse.
>
> 151. Daniel Hernandez's actions as described herein constitute textbook domestic abuse, a pattern of conduct utterly intolerable in a civilized community. The acts are so outrageous in character, and so extreme in degree, as to violate all possible bounds of decency.
>
> 152. Daniel Hernandez acted intentionally or recklessly at all times, intentionally acting abusively toward Plaintiff when he knew, or reasonably should have known, that Plaintiff would suffer extreme emotional distress as a result.
>
> 153. Daniel Hernandez knew that Plaintiff was especially susceptible to severe emotional distress as a result of his abuse for multiple reasons, including, but not limited to, that Plaintiff was his romantic partner, and therefore likely to be especially traumatized by such abuse from a figure who would ordinarily be a source of love and support; that Plaintiff lacked other sources of support as a direct result of Daniel Hernandez's own actions in isolating Plaintiff from her friends and family; and that the power balance in Daniel Hernandez and Plaintiff's relationship was profoundly skewed in his favor, due to Daniel Hernandez's significant wealth and prominence, his ability to physically intimidate and dominate Plaintiff through acts of force by himself or his associates, and Daniel Hernandez's success in isolating Plaintiff from others who might have defended her.

[5] This paragraph encompasses the whole factual basis laid out in the complaint.

> 154. Plaintiff has suffered severe emotional distress as the direct result of Daniel Hernandez's abusive and barbaric actions toward her. Plaintiff's severe emotional distress has manifested in, among other things, trauma, mental suffering and anguish, lost enjoyment or quality of life, depression, and anxiety.
>
> 155. As a result of Daniel Hernandez's knowing infliction of severe emotional distress upon Plaintiff through a deliberate course of violent, manipulative abuse, Plaintiff is entitled to recover compensatory damages and punitive or exemplary damages in an amount to be proven at trial.

[ECF No. 54 ¶¶ 148–154].

As the pleading reflects, substantial portions of Count 4 substantially overlap with the conduct that forms the basis of Plaintiff's other tort claims—including, for example, the alleged violent assaults and drugging alleged in Plaintiff's battery and sexual-battery claim in Count 2 [ECF No. 54 ¶¶ 124–138]; the alleged threats of physical violence that form the basis of Count 3 [ECF No. 54 ¶¶ 139–147]; and the "isolation" pleaded in the false imprisonment theory pled in Count 7 [ECF No. 54 ¶¶ 174–179]. In other words, insofar as Count 4 depends upon allegations already subsumed within those other torts, the Court hereby grants the Motion in part and narrows those claims to ensure that Count 4 does not proceed on facts forming the basis of any other tort claim in the SAC. *See Johns Hopkins All Children's Hosp., Inc.*, 425 So. 3d at 664–65 (remanding for a new trial where plaintiff would not be allowed to prove IIED using evidence supporting other torts).

This conclusion does not dispose of Count 4 in its entirety, however, because Paragraph 150 also relies on conduct that does not derive from any tort in the SAC, specifically, allegations that Hernandez released pornographic sexual content of Plaintiff for the purpose of humiliating and threatening her [ECF No. 54 ¶¶ 115–123, 150]. That allegation does not form the basis of any other *tort* in the SAC, *see id*. at 665 (requiring that any IIED claim rest on "facts . . . independent of any other alleged tort"), so the Court need not disregard it on the basis of the independent-tort

principles addressed above.[6]

The Court therefore considers the non-duplicative portions of Count 4 to determine if such allegations plausibly allege sufficiently outrageous conduct to state a claim for IIED under Florida law. The answer is yes but in a limited way—limited to the non-duplicative and non-conclusory portions of Count 4 that plausibly state a claim for IIED. What falls in that category? As best the Court can discern, two things survive: allegations that Hernandez "release[ed] pornographic sexual content of Plaintiff to humiliate and threaten her, including in front of the whole world and Plaintiff's family" and "gaslight[ed] her to convince her that this violent abuse was in fact her fault" [ECF No. 54 ¶ 150]. The alleged use of private sexual material as an instrument of coercion, retaliation, and humiliation—particularly in the context of the parties' intimate relationship and the broader course of conduct alleged—is conduct that, if proven, could reasonably be regarded as exceeding "all possible bounds of decency" and as "utterly intolerable in a civilized community." *McCarson*, 467 So. 2d at 278; *see also Conradis v. Geiger*, No. 18-cv-1486, 2021 WL 4243720, at *5 (M.D. Fla. Sept. 17, 2021) (finding extreme and outrageous conduct where dissemination of private intimate images formed part of a campaign to expose, harm, and extort the plaintiffs). The allegations of "gaslighting" are, by themselves, likely insufficient to show IIED, but viewed in combination with the publication allegations, the Court is satisfied that they plausibly support a claim for IIED. *Johnson v. Thigpen*, 788 So. 2d 410, 413 (Fla. Dist. Ct. App. 2001) ("The viability of a claim for intentional infliction of emotional distress is highly fact-dependent and turns on the sum of the allegations in the specific case at bar."). As for the balance of Count 4, however, it is either clearly duplicative of other tort claims in the SAC, for the reasons stated above, or entirely

[6] Defendant identifies no authority establishing that this independent tort principle requires a court to disregard conduct merely because it also supports a separate federal statutory cause of action.

conclusory in nature [ECF No. 54 ¶ 151 ("Daniel Hernandez's actions as described herein constitute textbook domestic abuse, a pattern of conduct utterly intolerable in a civilized community."); ECF No. 54 ¶ 152 ("The acts are so outrageous in character, and so extreme in degree, as to violate all possible bounds of decency.")].

Nothing in this Order should be construed to minimize the allegations in the SAC. Plaintiff remains free to pursue the theories of assault, battery, invasion of privacy, exploitation, and other claims set forth in the SAC. And Count 4 survives as limited herein.

### III. Counts 5 and 6 plausibly allege claims for Florida unauthorized publication of likeness and common law misappropriation.

Count 5 alleges a violation of Fla. Stat. § 540.08, which prohibits the unauthorized publication of one's name or likeness for commercial or advertising purposes [ECF No. 54 ¶¶ 156–164]. Count 6 alleges a common law claim for commercial misappropriation [ECF No. 54 ¶¶ 165–173]. Both of these claims are based on the same facts, namely, that Hernandez used the images and likenesses of Plaintiff and her minor daughter without their consent for his own commercial benefit, specifically in a music video entitled "La Respuesta" (posted online in September 2024) and a social media post promoting the music video during the same timeframe [ECF No. 54 ¶¶ 157–158, 162, 166–168, 171].

Hernandez moves to dismiss Counts 5 and 6 on the ground that Plaintiff does not allege that her image or likeness was used to "promote a product or service separate and apart from the publication itself" [ECF No. 75 pp. 15–18; ECF No. 92 pp. 8–9]. According to Defendant, the YouTube music-video posting described in the SAC promotes nothing beyond the video itself and therefore cannot satisfy the commercial-purpose element of Fla. Stat. § 540.08 or its common-law counterpart [Tr. 31; ECF No. 92 p. 8]. Hernandez further argues that the fact that an expressive work generates revenue does not itself constitute the required commercial use, and that generalized

promotion of his personal brand through views and engagement is too indirect to amount to the direct promotion of a separate product or service [ECF No. 75 pp. 15–18, ECF No. 92 pp. 8–9; *see* Tr. 31, 38]. Plaintiff takes the opposite view, asserting that the SAC plausibly alleges that Hernandez used her image and likeness to advance his brand, generate views and clicks, and promote musical content and social-media monetization beyond the publication itself—as evidenced by, for example, the music video being posted on YouTube for free and other various social media platforms for free, and that Hernandez has patented the name Tekashi69 which is his social media and professional alias [ECF No. 88 pp. 13–14; ECF No. 54 ¶¶ 157–158, 166–167; *see* Tr. 36–38].

As relevant here, Fla. Stat. § 540.08 provides a civil action for damages (including punitive damages) when a person "publish[es], print[s], display[s] or otherwise publicly use[s] for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by (a) such person; or (b) [a]ny other person, firm or corporation authorized in writing by such person to license the commercial use of her or his name or likeness . . . ." Fla. Stat. § 540.08(1). The parallel common law tort of commercial misappropriation of likeness (also described as common law invasion of privacy) is substantially identical to Fla. Stat. § 540.08 and is often analyzed together. *See, e.g.*, *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1320 & n.1 (11th Cir. 2006) ("Although section 540.08 now codifies the common law right against misappropriation, the statute permits a party to proceed under available common law invasion of privacy theories." (citing Fla. Stat. § 540.08(6)); *Valentine v. C.B.S., Inc.*, 698 F.2d 430, 433 (11th Cir. 1983); *Taylor v. Trapeze Mgmt., LLC*, 17-cv-62262, 2019 WL 1468515, at *6 (S.D. Fla. Feb. 27, 2019) ("Under Florida law the elements of common law invasion of privacy—commercial misappropriation of

likeness coincide with the elements of unauthorized publication of name or likeness in violation of Fla. Stat. § 540.08." (quoting *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1220 (M.D. Fla. 2002)).

To sustain a claim under either theory, Florida courts require allegations showing that the defendant used the plaintiff's likeness to directly promote a product, service, or commercial interest. *See Almeida*, 456 F.3d at 1325; *Tyne v. Time Warner Entm't Co., L.P.*, 901 So. 2d 802, 808 (Fla. 2005) (stating that "[t]he purpose of section 540.08 is to prevent the use of a person's name or likeness to directly promote a product or service because of the way that the use associates the person's name or personality with something else"); *Loft v. Fuller*, 408 So. 2d 619, 622–23 (Fla. Dist. Ct. App. 1981) (same); *Valentine v. C.B.S., Inc.*, 698 F.2d 430, 433 (11th Cir. 1983) ("The trial court properly held that, as a matter of law, the ballad 'Hurricane' did not commercially exploit Valentine's name. The defendants did not use her name to directly promote a product or service. Use of a name is not harmful simply because it is included in a publication sold for profit.").

Accepting the allegations as true, Plaintiff has plausibly alleged the commercial-use element of both unauthorized publication of name or likeness under Fla. Stat. § 540.08 as well as the common law tort of commercial misappropriation. The SAC alleges that Hernandez posted the "Respuesta" music video across YouTube and other platforms using Plaintiff's image and likeness and that he did so to promote his brand identity, generate publicity, increase views and engagement, and drive monetized traffic to his social-media and music channels [ECF No. 54 ¶¶ 110–111 (alleging that Hernandez uses social-media platforms to "promote his brand" and that the music-video posting was part of this strategy); ECF No. 54 ¶¶ 157–158, 166–167 (alleging that Hernandez used images of Plaintiff and her daughter in the music video to promote and advertise

his music, social media presence, and broader brand, thereby generating publicity, views, streams, and other sources of income); *see also* ECF No. 88 pp. 13–14 & Tr. 38]. These allegations and the reasonable inferences drawn therefrom, taken as true, plausibly assert that Hernandez used Plaintiff's likeness to promote commercial interests within the parameters of Florida law.[7]

With no other basis offered to warrant dismissal of these claims, Counts 5 and 6 survive Hernandez's Motion to Dismiss.

**IV. Counts 8–13, Counts 17–22, and Counts 26–30 are subject to the heightened pleading standard of Rule 9(b) and fail to satisfy that standard.**

Following the hearing on this Motion, the Court directed supplemental briefing on the pleading standard applicable to Counts 8–13, 17–22, and 26–30 [ECF No. 100]. In that submission, Plaintiff concedes that Rule 9(b) applies to her fraud and fraud-conspiracy claims (Counts 26–27) and to her conversion and civil-theft claims and to the related aiding-and-abetting and conspiracy claims (Counts 8–13 and 17–22) [ECF No. 101 p. 2]. Plaintiff disputes only whether Rule 9(b) applies to her constructive-fraud and related aiding-and-abetting and conspiracy claims (Counts 28–30), arguing that courts are divided on whether such claims necessarily "sound in fraud" [ECF No. 101 p. 2]. Defendant, by contrast, maintains that all of Counts 8–13, 17–22,

[7] The Court has assumed, for purposes of this analysis, that Florida law requires a Defendant to have used the name/picture to promote a product or service "separate and apart" from the medium in which the unauthorized use appears (here, the Respuesta video and the social media post about the Respuesta video) [*see* ECF No. 88 pp. 12–15; ECF No. 75 pp. 15–18; ECF No. 92 pp. 8–9]. This "separate and apart" gloss is not totally self-evident from a review of the Florida authorities cited, however, and appears to be a distillation of Florida law by a district court in this district. *See Fuentes v. Mega Media Holdings, Inc.*, 721 F. Supp. 2d 1255, 1260 (S.D. Fla. 2010) ("*Even* if the allegations in this paragraph were true, it does not sufficiently state a common law appropriation claim because it does not state Defendants used Plaintiff's name or picture to promote a product or service *separate and apart* from the television show."). The Court would reach the same conclusion as to Counts 5 and 6 regardless but has doubts about the proper formulation of Florida law with respect to the degree of separateness required to show commercial use in this area.

and 26–30 fall within the ambit of Rule 9(b) because each rests on the same alleged fraudulent course of conduct—the misrepresentations, omissions, and concealment surrounding Hernandez's control of Plaintiff's finances and the diversion of her funds [ECF No. 102 pp. 2–5].

As noted above, Rule 9(b) imposes a particularity requirement for pleading when a party "alleg[es] fraud or mistake." Fed. R. Civ. P. 9(b). The question whether 9(b) applies to a given claim depends not on how a plaintiff chooses to "style[] his claim" but rather on "the factual allegations underlying a plaintiff's claim." *Pop*, 145 F.4th at 1293–94; *see Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019). This is why a claim that "sounds" in fraud—even if not explicitly presented in the cause of action of fraud—can be subject to the particularity requirement of Rule 9(b). *Pop*, 145 F.4th at 1293. To navigate what "sounds in fraud," the Eleventh Circuit has used the common law definition of fraud as a guidepost, explaining that fraud consists of "[a] false representation of a material fact made by one who knew it was false" made to someone who did not know of its falsity, "with the intent to deceive such person and influence his action, which did deceive such person and influence his action to his damage." *Id.* at 1294–95 (quoting *United States v. Feldman*, 931 F.3d 1245, 1266 (11th Cir. 2019) (W. Pryor, C.J., concurring) (quotation omitted)). Fraud may also occur through the knowing concealment of material facts. *Id.*; *see generally Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 116 (2024) (describing federal securities fraud statutes as "target[ing] the same basic behavior: misrepresenting or concealing material facts").

Because the parties agree that Rule 9(b) applies to Counts 8–13, Counts 17–22, and Counts 26–27, the Court need not further explore the applicability of Rule 9(b) to those counts. The Court thus focuses only on Counts 28–30:

- Count 28 – Civil Theft – Additional Sets of Funds (against All Defendants) [ECF No. 54 ¶¶ 417–438].

- Count 29 – Conspiracy to Commit Constructive Fraud (against All Defendants) [ECF No. 54 ¶¶ 439–460].
- Count 30 – Aiding and Abetting Constructive Fraud (against All Defendants) [ECF No. 54 ¶¶ 461–484].

Count 28 alleges constructive fraud based on Defendants' alleged abuse of a confidential or fiduciary relationship through false statements, omissions, and deceptive conduct to obtain and use Plaintiff's funds [ECF No. 54 ¶¶ 417–438]. Count 29 alleges that Defendants conspired to carry out that scheme by, among other things, creating and using Cliq Management to obtain control of Plaintiff's funds, fraudulently obtaining and using the Cliq Agreement, falsely representing their authority to obtain the Music Video Funds, fabricating account statements, and concealing their use of Plaintiff's money [ECF No. 54 ¶¶ 439–460]. And Count 30 rests on substantially the same alleged conduct, asserting that Defendants knowingly assisted one another in obtaining control of Plaintiff's funds through the Cliq Agreement and Cliq Management accounts, diverting and spending those funds, making and concealing false statements, and fabricating account records to perpetuate the scheme [ECF No. 54 ¶¶ 461–484]. All three of these claims incorporate the general factual allegations in the SAC, which repeatedly refer to the Defendants' acts as "fraud" [ECF No. 54 ¶¶ 1, 3, 7, 56, 64, 67, 74, 75, 79, 83, 89, 93, 100, 101], and a "fraudulent scheme" [ECF No. 54 ¶¶ 56, 92], and also allege a consistent narrative of intentional, ongoing deception used to gain control over Plaintiff's finances.[8]

Although Counts 28, 29, and 30 as alleged seem clearly in the camp of "sounding in fraud,"

[8] For example, according to the SAC, Hernandez told Plaintiff that others were exploiting and stealing from her [ECF No. 54 ¶ 27], represented that he would help manage and protect her financial affairs [ECF No. 54 ¶ 53], and ultimately obtained control of Plaintiff's money [ECF No. 54 ¶¶ 70–73]. The SAC expressly alleges that "[t]hese were all lies to take control of Plaintiff's money, which Defendants always intended to steal and use for their own benefit" [ECF No. 54 ¶ 53].

Plaintiff attempts to persuade otherwise through a general theory that constructive fraud may arise from the abuse of a confidential or fiduciary relationship without proof of a knowingly false statement [ECF No. 101 p. 2 & n.2; pp. 6–8]. Even if true as to some formulation of a constructive fraud claim somewhere, that argument fails here given the obviously fraud-based nature of Counts 28, 29, and 30. *See Pop*, 145 F.4th at 1293–95; *DJ Lincoln Enters., Inc. v. Google LLC*, No. 21-12894, 2022 WL 203365, at *3 (11th Cir. Jan. 24, 2022) (applying Rule 9(b) to a constructive-fraud claim). Indeed, each of these counts expressly premises liability on false statements, misleading omissions, concealment, and deceptive conduct allegedly used to obtain control of Plaintiff's funds and conceal their diversion [ECF No. 54 ¶¶ 419–437, 442–459, 463–480]. More precisely, each of these counts alleges that "Defendants made false and misleading statements and misleading omissions of material fact" on which "Plaintiff reasonably relied . . . to her detriment" [ECF No. 54 ¶¶ 376, 420, 442, 463]; that Defendants acted with the purpose of "wrongfully depriv[ing] Plaintiff of her money" [ECF No. 54 ¶¶ 377, 421, 443, 464]—diverting those funds "to their own pockets for their own personal uses" [ECF No. 54 ¶¶ 386, 407, 430, 452, 473]; and that Defendants continued to lie to Plaintiff to "perpetuate their fraud" [ECF No. 54 ¶¶ 388, 408, 433, 453, 474]. On this record, there can be no reasonable dispute that Counts 28, 29, and 30 (like Counts 8–13, 17–22, and 26–27) proceed on a unified theory of fraudulent conduct—a point Plaintiff essentially conceded during the hearing [*see* Tr. 47–48 (agreeing that Counts 8–13, 17–22, and 26–30 are premised on allegations that Plaintiff "was lied to and then misled, leading to her financial loss"); Tr. 48 (conceding that Counts 28 and 29 are "dependent upon the primary fraud conduct")]. For these reasons, the Court is fully satisfied that the claims in Counts 28 (constructive fraud), 29 (conspiracy to commit constructive fraud), and 30 (aiding and abetting constructive fraud) sound in fraud for purposes of Rule 9(b).

Having established that Rule 9(b) applies to Counts 8–13, 17–22, and 26–30, the Court next evaluates the sufficiency of the allegations in those counts under that heightened standard. On that inquiry, the Court agrees with Hernandez that none of the challenged counts meets Rule 9(b) because the SAC identifies no specific misrepresentation with particularity and improperly lumps Defendants together throughout [ECF No. 102 pp. 3–10; Tr. 9].[9]

As noted above, claims subject to Rule 9(b) must identify the precise statements, documents, or misrepresentations made; the time, place, and person responsible for each statement; the medium through which it was conveyed; the content of the statement; how it misled the plaintiff; and what the defendant gained through it. *See Pop*, 145 F.4th at 1296.[10] Plaintiff has not met that requirement here for the challenged counts. The SAC describes a broad course of deception—including fabricated accounting statements, false assurances about creating a secure bank account, and concealment of transfers and expenditures [ECF No. 54 ¶¶ 21, 51–55, 60–75, 78–82, 89–92]. The SAC also alleges the general substance of several alleged misrepresentations, some of which are associated with particular dates or approximate time periods [ECF No. 54 ¶¶ 78 (alleging that, on February 7, 2024, Hernandez claimed that he "had paid for the gathering himself"); 82 (alleging that, in mid-March 2024, Daniel and Oscar Hernandez "falsely represented that they were authorized as Plaintiff's managers" to request and receive the Music Video Funds);

---

[9] The Court understands that Counts 8–13, 17–22, and 26–30 are lodged against all Defendants, not just Hernandez, and that Defendant Cliq Management has defaulted in this action. Nevertheless, the Rule 9(b) conclusion applies as a matter of pleading to all such claims and therefore warrants dismissal of these claims even as to the defaulted defendant.

[10] This matters especially in cases with multiple defendants because "fair notice is perhaps the most basic consideration underlying Rule 9(b)"; hence, the plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (citation and quotation omitted) (alteration adopted).

97 (alleging that, on June 6, 2024, Hernandez "claimed that he was paying for all Plaintiff's expenses")]. But none of the alleged fraudulent statements and omissions contains all of the requisite components of Rule 9(b), which requires a claimant to plead "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled [plaintiff]; and (4) what the defendants gained by the alleged fraud." *Cisneros*, 972 F.3d at 1216 (quotation omitted). Some identify an actor or the general substance of the alleged deception but do not identify when, where, or how the alleged statement was made [*see, e.g.*, ECF No. 54 ¶¶ 74 (alleging that Oscar and Zaied "created fake accounting statements" at Hernandez's instruction); 387 (alleging that Hernandez lied "on numerous occasions" about using "his own funds" for "certain expenditures")]. Others attribute the same alleged deception collectively to Defendants without specifying who said what or distinguishing the circumstances of any particular Defendant's statement or omission [*see, e.g.*, ECF No. 54 ¶¶ 90, 92, 388, 390]. *See Brooks*, 116 F.3d at 1381 (11th Cir. 1997) (emphasizing the importance of Rule 9(b) in multiple-defendant cases to ensure fair notice as to who specifically did what in the alleged scheme). This failure of particularity pervades the allegations supporting the claims sounding in fraud. And it applies not only to Hernandez but also to the allegations against Oscar, Zaied, and Cliq Management, as the SAC attributes only generalized concealment and participation without identifying any specific statements with the "time, place, and person responsible" markers required by Rule 9(b) [*see, e.g.*, ECF No. 54 ¶¶ 57, 67, 74, 82, 89, 97, 100].[11]

[11] Plaintiff emphasizes that the SAC identifies the source and amount of both the Distribution Agreement Funds and the Music Video Funds, the intended purpose of the Music Video Funds, and details concerning when and through which accounts the funds were transferred [ECF No. 101 pp. 3–6]. Plaintiff also identifies Defendants' alleged motives for obtaining and spending those funds for their own benefit [ECF No. 101 p. 4]. Those allegations provide detail about the funds and the chronology of the alleged scheme, but they do not supply the missing particulars of the alleged fraudulent statements and omissions identified above.

For these reasons, Counts 8–13, 17–22, and 26–30 are dismissed as deficient under Rule 9(b)'s heightened pleading standard.

**V. Hernandez's Motion to Dismiss Plaintiff's breach of contract claim (Count 31) is moot because Count 31 is lodged against Cliq Management LLC only**.

Plaintiff confirmed at the hearing that Count 31 is asserted only against Cliq Management, not Hernandez personally [Tr. 58–59]. In light of that clarification, Hernandez's Motion to Dismiss Count 31 is denied as moot.

**VI. Dismissal of Plaintiff's alternative breach of fiduciary duty claim (Count 32) is not warranted at this stage**.

Finally, Hernandez seeks dismissal of Count 32, which pleads a breach of fiduciary duty claim against all Defendants for "stealing from and defrauding Plaintiff" [Tr. 60 (Plaintiff describing alternative nature of Count 32)]. As pled, this is an alternative claim in the event the Court finds the Cliq Agreement to be valid and enforceable [ECF No. 54 ¶ 489]. More generally, Count 32 alleges that Defendants Daniel Hernandez, Oscar Hernandez, and Zaied "are not protected by Cliq Management's corporate form" because they "dominated and controlled Cliq Management such that Cliq Management did not have an independent existence from Daniel Hernandez, Oscar Hernandez, and Zaied, who ignored corporate formalities and commingled corporate funds with personal funds" [ECF No. 54 ¶ 491].

Hernandez believes dismissal is warranted because Count 32 is inherently contradictory: on the one hand, Plaintiff spends the vast majority of the SAC asserting that the Cliq Agreement is invalid because it was procured by fraud, yet on the other hand relies on the Cliq Agreement to argue that Defendants owed fiduciary duties to her arising from that agreement [ECF No. 75 pp. 18–19; Tr. 59–60].

The Court finds this reason insufficient to warrant dismissal at this stage. Alternative pleading is permitted under Federal Rule of Civil Procedure 8(d). Any challenge to the existence or to the scope of a fiduciary duty is better resolved on a more complete record at summary judgment. Count 32 may proceed, although Plaintiff is cautioned that she will be bound by the theories and claims as pled in the SAC.

**CONCLUSION**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Hernandez's Motion to Dismiss the Second Amended Complaint [ECF No. 75] is **GRANTED IN PART AND DENIED IN PART** in accordance with this Order.
2. Counts 1, 2, 3, 5, 7, 14, 15, 16, 23, 24, 25 are not challenged by the Motion and thus proceed.
3. Count 4 may proceed as narrowed herein.
4. Counts 5 and 6 may proceed as alleged.
5. Counts 8–13, 17–22, and 26–30 [ECF No. 54] are **DISMISSED WITH PREJUDICE** for failure to satisfy Rule 9(b). Plaintiff amended her pleading once prior to service [ECF No. 10] and thereafter sought [ECF No. 51] and obtained leave of Court to file a final amended pleading (the SAC) [ECF No. 53]. Plaintiff did not request leave to amend in opposition to the Motion to Dismiss [ECF No. 88] and has not filed a motion seeking further amendment.
6. Count 31 proceeds against Defendant Cliq Management LLC only [Tr. 58–59]. Hernandez's Motion to Dismiss Count 31 is therefore **DENIED AS MOOT** as to that claim.
7. Count 32 may proceed in accordance with this Order.

8. The Court expresses no opinion on the ultimate merits of the surviving claims or on the applicability of any defenses.

9. On or before **September 14, 2026**, Defendant Hernandez shall answer the SAC in accordance with this Order.

**ORDERED** in Chambers at Fort Pierce, Florida, this 25th day of August 2025.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record